# FORDHARRISON

2000 M Street NW | Suite 505
Washington, D.C. 20036
Tel 202-719-2000 | Fax 202-719-2077

Writer's Direct Contact:
ANESSA ABRAMS
202-719-2029
aabrams@fordharrison.com

December 20, 2024

**VIA ECF**

Honorable Julie R. Rubin
United States District Judge
U.S. District Court for the District of Maryland
101 West Lombard Street
Baltimore, MD 20770

> Re: **Cooper v. Baltimore Gas and Electric Company et al.**
> **Civil Action No. 1:23-cv-03116-JRR**
> **Request for Pre-Motion Conference**

Dear Judge Rubin:

  I am counsel for Defendant Whelan Security Mid-Atlantic LLC, d/b/a GardaWorld Security Services, d/b/a GardaWorld ("GardaWorld") in the above matter. I write on behalf of GardaWorld and co-Defendant Baltimore Gas and Electric Company ("BGE"), pursuant to the Court's Discovery Order [ECF 34], to request a pre-motion conference, in advance of the filing of a motion for sanctions, regarding text and other electronic communications between Plaintiff and Tavon Roberts, the individual whom Plaintiff alleges sexually harassed her. Despite numerous efforts to resolve the issue, both in writing and via a meeting of counsel, the parties have been unable to reach a resolution, and Plaintiff's deposition is noticed for January 15, 2025.

  In both her Complaint in this action and her administrative charge signed on September 22, 2022, Plaintiff quotes purported text communications between herself and Mr. Roberts.

  In its discovery requests propounded on Plaintiff, GardaWorld sought full and complete text messages and/or email communications, in native format, between Plaintiff and Mr. Roberts. GardaWorld also sought full and complete text messages and/or email communications, in native format, between Plaintiff and any current or former employee of GardaWorld. BGE similarly requested full and complete text messages and/or email communications between Plaintiff and any current or former employee of BGE, also in native format.

  Plaintiff did not produce any email communications between herself and Mr. Roberts, or any email communications between herself and any GardaWorld or BGE employee. Plaintiff's counsel subsequently indicated Plaintiff did not have email communications between herself and Mr. Roberts. Plaintiff produced what appears to be only one communication between herself and Mr. Roberts via social media, despite representations by Plaintiff that she and Mr. Roberts communicated via Facebook.

Honorable Julie R. Rubin
December 20, 2024

As it relates to text messages, Plaintiff did not produce in native format any text messages between herself and Mr. Roberts. Rather, Plaintiff produced some screenshots of purported text messages between herself and Mr. Roberts. In a follow up letter to Plaintiff's counsel, the undersigned noted the screenshots of text messages were not full and complete. Undersigned counsel noted various areas where the communications were cut-off. Counsel further noted it was difficult to place the text communications in chronological order to ascertain complete conversations and it was impossible to review embedded images and/or videos given they were not produced in native format. Undersigned counsel again requested the full and complete text communications, in native format. In this letter, undersigned counsel also noted Plaintiff did not produce any text messages between herself and GardaWorld, despite her allegation she sent Major Engel, a GardaWorld employee, a text message on August 29, 2022 regarding Mr. Roberts.

On December 2, 2024, Plaintiff's counsel indicated they had secured Plaintiff's "sims card from her phone that she traded" and indicated they had made contact with a "data company" to "read [Plaintiff's] sims card." Via email dated December 4, 2024, Defendants expressed their concerns with removal of the SIM card, including that text messages are not often contained on a SIM card. Counsel further requested specific information, including but not limited to, whether Plaintiff still had in her possession the cell phone she was using during the relevant time period to communicate with Mr. Roberts; if not, the circumstances of when and how she disposed of the phone; and the make and model of the phone. Defendants further noted Plaintiff needed to retain a forensic specialist.

Via email dated December 11, 2024, Plaintiff's counsel advised that Plaintiff traded in her cell phone on September 4, 2024. Undersigned counsel's office contacted T-Mobile, Plaintiff's mobile service provider at the time, and was informed T-Mobile does not maintain text messages. Thus, Defendants cannot obtain the contents of the text messages from the mobile carrier.

By letter dated December 14, 2024, undersigned counsel set forth specific items requested of Plaintiff given Plaintiff's failure to maintain the cell phone utilized to communicate with Mr. Roberts. Rather than repeat those items herein, a copy of the letter (without exhibits) is attached hereto.

Subsequent thereto, Plaintiff's counsel indicated they would not advise Plaintiff to sign an authorization for the communications, but would "request the information and prepare a privilege log," and noted again they would produce information from Plaintiff's SIM card. During a meeting between counsel on December 16, 2024, Plaintiff's counsel confirmed they never reviewed the text messages between Plaintiff and Mr. Roberts; rather, they simply relied upon the screenshots Plaintiff provided to them. Moreover, Plaintiff's counsel advised they would not incur the expense to retain a forensic expert. Defendants have not received a response to any of the other specific items set forth in the undersigned's December 14 letter, including but not limited to requests concerning Plaintiff's cloud storage, internal or external storage devices, and social media accounts. Moreover, Plaintiff has not explained, as requested, the decision to "trade in" her cell phone in the midst of this pending litigation.

Plaintiff's text communications with Mr. Roberts are critical to her claims and Defendants' defenses, including, but not limited to, whether Plaintiff's relationship with Mr.

Honorable Julie R. Rubin
December 20, 2024

Roberts was consensual. Plaintiff's proposed resolution – i.e., review of the SIMS card – does not resolve this issue. Moreover, as noted, Plaintiff's mobile service provider at the time indicated it does not maintain text messages, and Plaintiff's counsel indicated a refusal to incur the expense for a forensic expert. Plaintiff's actions severely prejudice Defendants.

    Accordingly, Defendants request a pre-motion conference to discuss these issues and seek permission to file a motion seeking all available remedies and sanctions for spoliation, including but not limited to dismissal of this action.

    Thank you for your consideration.

    Sincerely,

    /s/ *Anessa Abrams*

    ANESSA ABRAMS
    *Counsel for Defendant*
    *Whelan Security Mid-Atlantic LLC*
    *d/b/a GardaWorld Security Services d/b/a*
    *GardaWorld*

Attachment
cc: Counsel of record (via ECF)
WSACTIVELLP:113850019.1

# ATTACHMENT

# FORDHARRISON

2000 M Street NW | Suite 505
Washington, D.C. 20036
Tel 202-719-2000 | Fax 202-719-2077

Writer's Direct Contact:
ANESSA ABRAMS
202-719-2029
aabrams@fordharrison.com

December 14, 2024

**VIA EMAIL**

Governor Jackson, III, Esq.
Law Office of Governor Jackson, III, LLC
400 E. Joppa Road
Suite 50
Towson, MD 21286

Donald R. Huskey, Esq.
Law Office of Donald R. Huskey LLC
9419 Lyonswood Drive
Owings Mills, MD 21117

  Re: ***Cooper v. Baltimore Gas and Electric et al.,***
    ***Case No. 1:23-cv-03116-JRR (D. Md.)***

Dear Counsel:

  I write regarding Plaintiff's text messages and other electronic communications relevant to this matter.

  As you recall, GardaWorld's Request for Production No. 13 sought full and complete text messages and/or email communications, in native format, between Plaintiff and Tavon Roberts. Request for Production No. 14 sought full and complete text messages and/or email communications, in native format, between Plaintiff and any current or former employee of GardaWorld. BGE similarly sought all documents evidencing any communication between Plaintiff and any BGE employee, and full and complete text messages and/or email communications between Plaintiff and any current or former employee of BGE.

  Plaintiff did not produce any email communications between herself and Tavon Roberts, or any email communications between herself and any GardaWorld or BGE employee. You indicated in a subsequent letter that Plaintiff had no email communications between herself and Tavon Roberts.

  As it relates to text messages, Plaintiff did not produce in native format any text messages between herself and Tavon Roberts, as requested. Rather, Plaintiff produced, with her initial disclosures, some screenshots of text messages between herself and Tavon Roberts. In a letter dated November 20, 2024 (copy attached as Exhibit A), we noted the screenshots of text messages were not full and complete, noting various areas where the communications were cut-off. We also noted that it was difficult to place the text communications in chronological order to ascertain complete conversations and impossible to review embedded images and/or videos given they were not produced in native format. Based on the foregoing, we requested again that Plaintiff produce full and complete communications, in native format, between herself and Tavon Roberts.

Governor Jackson, III, Esq.
Donald R. Huskey, Esq.
December 14, 2024

In the November 20, 2024 letter, we further noted that Plaintiff did not produce any text messages with any current or former employee of GardaWorld, despite her allegation that she sent Major Engel a text message on August 29, 2022. We again asked for all communications, in native format. Even though GardaWorld produced a copy of the text message, Defendants are entitled to Plaintiff's copy and Plaintiff is required to produce such communications.

Via emails dated December 2, 2024, you indicated, among other things, you had secured Plaintiff's "sims card from her phone that she traded" and indicated you had made contact with a "data company" to "read [Plaintiff's] sims card." See Exhibits B & C. Via email dated December 3, 2024, Ms. White requested you not send out the SIM card to a third party without further discussion with Defendants' counsel, see Exhibit D, and you agreed.

I sent you a follow-up email on December 4, 2024, noting Defendants' concerns with removal of the SIM card, including that text messages are not often contained on a SIM card. I further requested specific information, including but not limited to, whether Plaintiff still had in her possession the cell phone she was using during the relevant time period to communicate with Tavon Roberts; if not, the circumstances of when and how she disposed of the phone; and the make and model of the phone. Defendants further noted Plaintiff needed to retain a forensic specialist and recommended James Vaughn at iDiscovery Solutions. See Exhibit E. In your email response of the same date, you indicated, among other things, that Plaintiff traded in the phone she utilized during the relevant period to communicate with Tavon Roberts, but kept the SIM card, which you agreed should be reviewed by a forensic expert to ensure "that as the client reported she forwarded all communications with Mr. Roberts to plaintiff's counsel." See Exhibit F.

I followed up with you on December 9, 2024, as we were still awaiting information regarding Plaintiff's cell phone, including the date she traded it in, the make and model, the cell phone number, and the mobile carrier. See Exhibit G.

Via email dated December 11, 2024, you advised that Plaintiff traded in her cell phone on September 4, 2024. You also provided the make and model of the cell phone, the mobile carrier, and the cell phone number. See Exhibit H.

The fact that Plaintiff traded in her cell phone **on September 4, 2024** – in the midst of this litigation – is disconcerting and completely unacceptable. Plaintiff has an obligation to preserve all evidence relevant to her claims and allegations – and her text communications with Tavon Roberts are critical to her claims and Defendants' defenses. As we communicated to you, the screenshots of text messages produced are incomplete and cut-off. We have contacted T-Mobile, Plaintiff's mobile carrier during the relevant time, and we were advised T-Mobile does not maintain text messages. Thus, there is no way for Defendants to obtain the content of the text messages from the mobile carrier. Plaintiff has destroyed the native form of critical evidence in this case.

In light of the foregoing, we expect Plaintiff to do the following:

- Ensure preservation of all information and data relevant to this case, including but not limited to data contained on any cell phone or other electronic device, cloud storage, internal or external storage devices, and electronic databases, applications and/or social media;

Governor Jackson, III, Esq.
Donald R. Huskey, Esq.
December 14, 2024

- By close of business Tuesday, December 17, 2024, provide a detailed explanation regarding the circumstances surrounding the decision to "trade in" pertinent evidence during pending litigation, including all efforts made to preserve it;

- By close of business Tuesday, December 17, 2024, provide Defendants the password for and access to Plaintiff's cloud storage, for defense counsel's review with a forensic expert (of Defendants' choosing) to ascertain whether any text messages and/or other relevant and responsive information is contained therein;

- By close of business Tuesday, December 17, 2024, execute a release (copy attached) to be provided to T-Mobile for any data or information associated with the cell phone number Plaintiff utilized during the relevant time period;

- By close of business Tuesday, December 17, 2024, provide Defendants with the make, model, cell phone number, and mobile service provider for all cell phones Plaintiff utilized from January 1, 2020 to the present, including her current cell phone, with the dates of use;

- By close of business Tuesday, December 17, 2024, retain James Vaughn at iDiscovery Solutions, at Plaintiff's expense, to conduct a complete forensic analysis of the SIM card in your possession, Plaintiff's current cell phone, and any other cell phone still within Plaintiff's possession and which Plaintiff used between January 1, 2020 and the present, and any other areas or devices where relevant information (including but not limited to text messages, emails, and electronic messages) may be stored;

  - Once retained by Plaintiff, Defendants' counsel expects to be included in a virtual meeting (to occur on or before December 20, 2024 depending upon Mr. Vaughn's availability) with you and Mr. Vaughn to discuss the scope of analysis and issues.

- By close of business Tuesday, December 17, 2024, provide Defendants the password for and access to all of Plaintiff's social media accounts. Defendants requested information in discovery regarding Plaintiff's social media accounts. Plaintiff failed to identify posts or comments made regarding her claims and/or allegations. In addition, Plaintiff failed to provide all documents concerning any posts, comments or photos Plaintiff made or uploaded on any social networking website since October 1, 2021, stating in response to the request, "Plaintiff does not recall any." We have seen in other information produced by Plaintiff that Plaintiff and Tavon Roberts communicated via Facebook messenger, but those communications (absent perhaps one) have also not been provided.

In light of Plaintiff's actions, Defendants have serious concerns regarding Plaintiff's preservation of evidence. Defendants reserve the right to raise these issues with the Court and to seek all available remedies and sanctions.

Governor Jackson, III, Esq.
Donald R. Huskey, Esq.
December 14, 2024

    We look forward to receiving the above by close of business on Tuesday. Thank you for your prompt attention to these issues.

Sincerely,<br>
/s/ <em>Anessa Abrams</em><br>
ANESSA ABRAMS

WSACTIVELLP:113833765.1