

400 E. Joppa Rd, Suite 302 ♦ Towson, MD 21286
1420 N. Capitol Street, NW ♦ Washington, D.C. 20002
tel: 410.528.5150    fax: 410.528.1055
gjackson@governorjacksonlaw.com
www.governorjacksonlaw.com

December 27, 2024

**DELIVERY VIA ELECTRONIC CASE FILING**
Honorable Julie R. Rubin
United States District Judge
U.S. District Court for the District of Maryland
101 West Lombard Street
Baltimore, Maryland 20770

    Re:    Cooper v. Baltimore Gas and Electric Company et al.
               Civil Action No. 1:23-cv-03116-JRR
               Request for Pre-Motion Conference

Dear Judge Rubin,

      I am co-counsel for Plaintiff Yvette Cooper in the above-captioned matter, and am writing on behalf of the Plaintiff, pursuant to the Court's Discovery Order (ECF 34), to request a pre-motion conference in advance of the filing of a motion for sanctions regarding the Defendant's failure to preserve the work cellphone of Tavon Roberts containing text and other electronic communications between Plaintiff Cooper and Tavon Roberts, the individual who sexually harassed Plaintiff Cooper. Despite efforts to resolve the issue, including an in-person meet-and-confer conference held on December 16, 2024, the parties have been unable to reach a resolution.

      As this honorable Court is aware, Plaintiff's administrative charge before the EEOC and the Plaintiff's Complaint quote to text message communications between Plaintiff Cooper and Mr. Roberts. Plaintiff Cooper and Mr. Roberts exchanged text message communications using Plaintiff Cooper's personal cell phone (of which she is still in possession and which has been offered to the Defendants for retrieval), and a cell phone belonging to Mr. Roberts.

      In Plaintiff's discovery requests propounded on Defendant GardaWorld, Plaintiff sought the following discoverable information:

**INTERROGATORY NO. 20:** Identify each conversation (in-person, over the phone, via computer (i.e. e-mail) or text messaging) that this Defendant's agents, servants, and/or employees had with Plaintiff Cooper regarding the circumstances surrounding her separation from her employment including the date, time, and place of such conversations, the name and address of all participants, the length of the conversation, and a description of any actions taken by this Defendant as a result of such conversations.

*************************************

**REQUEST NO. 12:** All electronic communications sent from Tayvon Roberts to the Plaintiff during the tenure of her employment.

****************************************

**REQUEST NO. 27:** Any communications (including text messages and e-mails) received from or sent to Tavon Roberts regarding, referencing, or relating to Yvette Cooper.

In response to these discovery requests, Defendant GardaWorld did not produce any responsive information which was purported to be from Mr. Roberts' cellphone.
 On December 12, 2024, the deposition of Roy Engel was conducted. Mr. Engel was a Major at GardaWorld during the relevant time that Mr. Roberts and Plaintiff Cooper were also employed with Defendant GardaWorld. Mr. Engel testified that following Plaintiff Cooper's termination, he was aware that there were sexually explicit text communications between Plaintiff Cooper and Mr. Roberts, that he was aware that Mr. Roberts had a company issued cell phone, but that he did not review the cellphone nor make any efforts to determine or otherwise preserve its contents before re-assigning the cellphone to another GardaWorld employee, as he testified:

> "Q: Well, when you got that information, what did you do?
> A: I attached it to that same letter and gave it to my boss. After we– we were actually on the phone and she said, well, my attorney's calling. I have to go. So we hung up. And minutes later, she sent me a thread from her phone to my text message that had happened, I recall, in January of that year. And it goes back and forth between the two of them, talking about— do I get into depth?
>  MS. ABRAMS: Whatever you remember.
> A: Okay. So what it says is, I'm going to go upstairs and get that chair and bring it back to my office so you can ride me. And then she says. I can't fuck you no more. And then he says, why not baby?
>  And she says, I don't— I have to keep my cookies to myself. I don't like sharing. And then the last phrase three is, what are you talking about? And that's — that's the caption that I got from Ms. Cooper that was also attached to the email that I sent to my director.
> Q: Okay. Did there come a time when you spoke to Captain Roberts after getting the text exchange?
> A: Yes, there was.
> Q: When did you speak to him?
> A: I believe it was the next day. I asked him about the accusation, and Mr. Roberts admitted that they had had a consensual relationship. That it hadn't happened in some time. And then I had asked him, was there anybody else? And he said no, that, you know, him and Morrison were just friends and that Cooper had assumed that there was a relationship going on. And at this point, once he admitted what was going, that was enough to again talk to my director and start the process of separating Mr. Tavon from the company."
> ********************************************



> "Q: Did he had a— did he have a company issued cell phone?
> A: He did.
> Q: Did you take the cell phone?
> A: I did.
> Q: Have you reviewed what was on the cell phone?
> A: I did not. There was no- I could not get in the password. That cell phone was then passed on to the next captain.
> Q: Where's the cell phone now?
> A: It should be with the next captain.
> Q: Who is the next captain?
> A: Ebony Wiley.
> Q: Did you ask him for the password to the cellphone?
> A: I did not."
> *See attached Exhibit* [Depo Tr. of Roy Engel at p. 53-56]

Based on this testimony and the discovery produced by the Defendants to date, the communications emanating from and stored within Mr. Roberts' phone are (and if deleted, would have been) critical to Plaintiff's claims, and Defendants failure to preserve and maintain any data stored on Mr. Roberts' phone during the course of an internal human resource investigation into the termination and sexual harassment of Plaintiff Cooper severely prejudices Plaintiff Cooper.

Accordingly, Plaintiff Cooper requests a pre-motion conference to discuss this issue and seek permission to file a motion seeking all available remedies and sanctions for spoilation, including but not limited to the giving of an adverse instruction to the jury based on the actions (or lack thereof) of Defendant GardaWorld.

Thanks sincerely for your consideration.

Sincerely,

Governor E. Jackson, III
*Counsel for Plaintiff Yvette Cooper*.

Cc: Counsel of record (via ECF)