**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

Yvette Cooper                                                    *
2301 North Calvert Street
Baltimore, Maryland 21218

     *Plaintiff*

vs.                                                    Case Number 1:23-CV-03116

Baltimore Gas and Electric Company, et al.                    *
2 Center Plaza
110 West Fayette Street
Baltimore, Maryland 21227

     *Defendants*
**************************************************************************

**PLAINTIFF YVETTE COOPER'S MOTION
TO COMPEL AND REQUEST FOR ORDER FOR FORENSIC EXAMINATION
RELATING TO TAVON ROBERTS' WORK-ASSIGNED CELL PHONE AND
ELECTRONIC COMMUNICATIONS**

Plaintiff, Yvette Cooper ("Plaintiff") by and through her undersigned counsel, Donald R.

Huskey of the Law Office of Donald R. Huskey, L.L.C. and Governor Jackson, III of the Law

Office Governor Jackson, III L.L.C. hereby file this Motion To Compel, and in furtherance of

their Opposition state as follows:

*Statement of Facts*

The instant case involves Plaintiff Cooper's claims of sexual harassment, gender

discrimination, and retaliation by the Defendants' former agent, servant and employee, Tavon

Roberts, which caused her to manifest physical symptoms of being emotionally upset, including

crying, sustaining weight loss, embarrassment, loss of self-esteem and feeling of worthlessness

resulting in her mental health care and treatment, and exacerbation of her pre-existing mental

health condition of the following primary diagnosis: F41.1.300.02 General Anxiety disordere and

F43.10.309 posttraumatic stress disorder. *See Complaint* at para. 2. The toxic work environment

1

and circumstances surrounding Plaintiff Cooper's termination were memorialized in an email dated August 29, 2022 at 6:51 p.m. from Major Roy Engel, an agent, servant and employee of both GardaWorld and BGE, to Jayson Ramsey entitled "Write up on information shared by Yvetee Cooper about Capt. Tavon Roberts." *See Exhibit 1* [E-mail dated August 29, 2022]

As this honorable Court is aware, Plaintiff's administrative charge before the EEOC and the Plaintiff's Complaint quote to text message communications between Plaintiff Cooper and Mr. Roberts. Plaintiff Cooper and Mr. Roberts exchanged text message communications using Plaintiff Cooper's personal cell phone (of which she is still in possession and which has been offered to the Defendants for retrieval), and a cell phone belonging to Mr. Roberts.

In Plaintiff's discovery requests propounded on Defendant GardaWorld, Plaintiff sought the following discoverable information:

**INTERROGATORY NO. 20:** Identify each conversation (in-person, over the phone, via computer (i.e. e-mail) or text messaging) that this Defendant's agents, servants, and/or employees had with Plaintiff Cooper regarding the circumstances surrounding her separation from her employment including the date, time, and place of such conversations, the name and address of all participants, the length of the conversation, and a description of any actions taken by this Defendant as a result of such conversations.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REQUEST NO. 12:** All electronic communications sent from Tayvon Roberts to the Plaintiff during the tenure of her employment.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REQUEST NO. 27:** Any communications (including text messages and e-mails) received from or sent to Tavon Roberts regarding, referencing, or relating to Yvette Cooper.

In response to these discovery requests, Defendant GardaWorld did not produce any responsive information which was purported to be from Mr. Roberts' cellphone. *See Exhibit 2, 3*

[GardaWorld's Answers to Plaintiff's Interrogatories and Requests for Production of Documents]

On December 12, 2024, the deposition of Roy Engel was conducted. Mr. Engel was a Major at GardaWorld during the relevant time that Mr. Roberts and Plaintiff Cooper were also employed with Defendant GardaWorld. Mr. Engel testified that following Plaintiff Cooper's termination, he was aware that there were sexually explicit text communications between Plaintiff Cooper and Mr. Roberts, that he was aware that Mr. Roberts had a company issued cell phone, but that he did not review the cellphone nor make any efforts to determine or otherwise preserve its contents before re-assigning the cellphone to another GardaWorld employee, as he testified:

> "Q: Well, when you got that information, what did you do?
> A: I attached it to that same letter and gave it to my boss. After we– we were actually on the phone and she said, well, my attorney's calling. I have to go. So we hung up. And minutes later, she sent me a thread from her phone to my text message that had happened, I recall, in January of that year. And it goes back and forth between the two of them, talking about— do I get into depth?
>       MS. ABRAMS: Whatever you remember.
> A: Okay. So what it says is, I'm going to go upstairs and get that chair and bring it back to my office so you can ride me. And then she says. I can't fuck you no more. And then he says, why not baby?
>       And she says, I don't— I have to keep my cookies to myself. I don't like sharing. And then the last phrase three is, what are you talking about? And that's — that's the caption that I got from Ms. Cooper that was also attached to the email that I sent to my director.
> Q: Okay. Did there come a time when you spoke to Captain Roberts after getting the text exchange?
> A: Yes, there was.
> Q: When did you speak to him?
> A: I believe it was the next day. I asked him about the accusation, and Mr. Roberts admitted that they had had a consensual relationship. That it hadn't happened in some time. And then I had asked him, was there anybody else? And he said no, that, you know, him and Morrison were just friends and that Cooper had assumed that there was a relationship going on. And at this point, once he admitted what was going, that was enough to again talk to my director and start the process of separating Mr. Tavon from the company."
>       *******************************************
> "Q:  Did he had a— did he have a company issued cell phone?
> A: He did.
> Q: Did you take the cell phone?
> A: I did.

Q: Have you reviewed what was on the cell phone?
A: I did not. There was no- I could not get in the password. That cell phone was
then passed on to the next captain.
Q: Where's the cell phone now?
A: It should be with the next captain.
Q:Who is the next captain?
A: Ebony Wiley.
Q: Did you ask him for the password to the cellphone?
A: I did not."
*See attached Exhibit 4* [Depo Tr. of Roy Engel at p. 53-56]

On  December 16, 2024, Plaintiff's counsel set forth a reasonable and prudent suggestion

for the retrieval  of discoverable information from the cellphone of Tavon Roberts which was

still in possession of the Defendants. Mr. Huskey proposed as follows:

"Ms. Abrams:

We disagree with your assertion that Major Engel has no responsibility to
preserve the cellphone information as he had spoken to Tavon Roberts who had
confirmed that he had a sexual relationship with as a supervisor with a female
working for him which was in violation of company policy. I have given  to our
expert Mr. Clark the rough draft of the Major's deposition  testimony and he has
advised that he had a duty to preserve this information and should also have
complied with the requirement of the assignment of the fact finding to Human
Resources and any other committee designated by the companies. He advised that
the Major testified he could not open the phone as it was password protected. He
inquired then how was it open by the individual it was transferred to?
Additionally, Engel did conduct an investigation to its finality because he believed
Cooper was trying to set Roberts up based on the documents produced in
discovery. The documents further showed that Roberts based on interviews had
created an environment where employees were leaving due to hostilities that were
forming.

We request that you immediately secure the cellphone issued by the company that
was assigned to Tavon Roberts from the employee that it was transferred to days
after his termination. Please also advise us of how your client intends to produce
the information relevant to to the lawsuit. If you will not make an effort to secure
the phone and produce the communications and other materials, please advise and
we will address the matter with the Court. We are available to confer with you on
this request.

We have agreed to produce the Sims card from Yvette Cooper home to your
requested expert for downloading and we have not yet received a protocol for the
retrieval of this information. We have provided the requested information

regarding her carrier, the date the phone was exchanged, the location it was exchanged, and other information requested. I will request that my client contact her carrier and advise of all information that can be retrieved from her records. I will then inform you. Once we have this information, we can better address this issue. I am concerned that attorney client information as I stated is on the cellphone as I have communicated with my client on the phone since this claim was filed in EEOC.

To resolve the discovery dispute, it would seem prudent that you produce the information from Tavon Roberts cellphone related to the lawsuit and we will work to produce information from the Sims card and from her carrier. It seems only prudent to take these steps so that there is a full view for the court should this issue need to be decided by the court. I also note that this information has been subpoenaed by the court should defendant for Roberts to bring to his deposition today.

Please advise of your client's position. I look forward to working with your office amicably to insure to the best of our abilities, we are working to provide discovery by the parties to this action.

Best,
Donald R. Huskey" *See Exhibit 5* [E-mail dated December 16, 2024]

To date, Defendants have not substantively responded to Mr. Husky's request.

Based on the testimony of Mr. Engle and the lack of the production of any relevant, responsive discovery produced by the Defendants to date, the communications emanating from and stored within Mr. Roberts' phone are (and if deleted, would have been) critical to Plaintiff's claims, and Defendants failure to preserve and maintain any data stored on Mr. Roberts' phone during the course of an internal human resource investigation into the termination and sexual harassment of Plaintiff Cooper severely prejudices Plaintiff Cooper.

### *Legal Standard*

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or

defense, and (3) proportional to the needs of the case. *See, e.g.,* <u>South Carolina State Conference</u> <u>of NAACP v. McMaster</u>, 585 F. Supp. 3d 152 (2022); <u>Gordon v. T.G.R. Logistics, Inc</u>., 321 F.R.D. 401, 402 (D. Wyo. 2017).

  If a party fails to make a disclosure required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). Specifically, a party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).

  The court has broad discretion in deciding to grant or deny a motion to compel. *See, e.g.,* <u>Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.</u>, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (internal citation omitted); <u>Erdmann v. Preferred Research Inc.</u>, 852 F.2d 788, 792 (4th Cir. 1988); <u>LaRouche v.</u> <u>Nat'l Broad. Co.</u>, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."); <u>Mach. Sols., Inc. v. Doosan Infracore</u> <u>Am. Corp.</u>, No. 3:15-cv-03447-JMC, 2018 WL 573158, at *2 (D.S.C. Jan. 26, 2018).

***Legal Argument***

  **I.  DEFENDANT GARDAWORLD  HAS FAILED TO COMPLY WITH THE FEDERAL RULES IN RESPONSE TO DEFENDANTS' DISCOVERY REQUESTS AND DEFENDANT GARDAWORLD REFUSED PLAINTIFF'S OFFER TO ESTABLISH A PROTOCOL FOR THE PROVISION OF RESPONSIVE DISCOVERY.**

  It is well settled that a party has a duty to preserve evidence when the party is placed on notice that the evidence is relevant to the litigation or when the party should have known that the evidence may be relevant to future litigation. <u>Silvestri v. GMC</u>, 271 F.2d 583, 591 (4th Cir.

2001). The duty to preserve encompasses electronic communications and documents, such as emails, text messages, or other documents created by computer. <u>Zubulake v. UBS Warburg, LLC</u>, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003)(holding in employment discrimination case that defendant company had duty to preserve emails related to claims asserted by plaintiff, and ultimately requiring defendant to restore 77 backup disks in order to search for and produce those emails); <u>Felder v. MGM Nat'l Harbor, LLC</u>, Civil Action No. PJM-18-3405, 2024 U.S. Dist. LEXIS 139951, at *22, 2024 WL 3690779, at *8 (D. Md. Aug. 7, 2024)(duty to preserve is triggered by the filing of a charge of discrimination); *see also* <u>Modern Remodeling, Inc. v. Tripod Holdings, LLC</u>, Civil ACtion No. CCV-19-1397, 2021 U.S. Dist. LEXIS 163228, at *23, 2021 WL 3852323, at *7 (D. Md. Aug. 27, 2021) ("The defendants had a duty to preserve text messages."). In other words, "once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents. <u>Zubulake</u>, 220 F.R.D. at 219; *see also* <u>Thompson v. United States Department of Housing and Urban Dev.</u>, 219 F.R.D. 93, 100 (D. Md. 2003)(party had duty not to delete responsible emails and finding that discovery requests for deleted emails were proper).

   Here, Mr. Engel's email and testimony  leaves no doubt that Defendant GardaWorld should have known that the contents of Mr. Roberts' work-issued cellphone was evidence which may be relevant to future litigation, particularly given the salacious and explicit character of the text messages which Mr. Engel was aware that Mr. Roberts authored and sent to Plaintiff Cooper. *See* <u>Silvestri</u>, *supra*. Moreover, Mr. Engel *knew* that litigation was imminent based on Plaintiff Cooper's termination as he testified:

     "Q: When she said she was fired, did you bring her in for an interview?
     A: I did not. There was no— the only communication that we had was a phone

call that she contacted me, asked me if she could get results from the drug screen, inconclusive test. I told her now that she had walked off and not part of the company, I would have to ask my boss if that was acceptable. And she said, well, since I no longer work for the company, I just want to let you know that I've been sleeping with Tavon. And at this point, this is the first time that anything has come across abut any involvement with her and Tavon.

Q: Well, when you got that information, what did you do?

A: I attached it to that same letter and gave it to my boss. ***After we– we were actually on the phone and she said, well, my attorney's calling. I have to go.*** So we hung up. And minutes later, she sent me a thread from her phone to my text message that had happened. I recall, in January of that year. And it goes back and forth between the two of them, talking about– do I get into depth? *See Exhibit 4* at p. 52-53 (emphasis added).

Indeed, according to Defendant GardaWorld's own employee handbook, this Defendant had a right to monitor the subject communications and, by Mr. Engle's own admission, failed to do so.

Specifically, Defendant GardaWorld's handbook states in relevant part as follows:

> "Privacy
>
> No employee should expect privacy except which is governed by law. GardaWorld has the right, to monitor and preserve communications utilizing GardaWorld's networks, including data, voicemail, telephone logs, Internet use, network traffic, etc. to determine proper utilization, regardless of the ownership status of the device used to access the company's networks. ***Management reserves the right to review, retain, or release personal and company-related data on mobile devices to government agencies or third parties during an investigation or litigation. Management may review the activity and analyze usage patterns and may choose to publicize this data to assure GardaWorld's resources in these areas are being utilized according to this policy.*** No employee shall knowingly interfere with install of or disable any network software or system identified as a monitoring tool.
>
> Users should consider their Internet activities as periodically monitored and limit their activities accordingly. ***Management reserves the right to examine Email, personal file directories, web access, and other information stored on company devices, at any time and without notice.*** This examination ensures compliance with internal policies and assists with the management of company information systems. Users should be aware clear text email is not a confidential means of communication. The company cannot guarantee electronic communications will be private. Employees should be aware electronic communications can, depending on the technology, be forwarded, intercepted, printed, and stored by others. Users should also be aware once an email is transmitted, it may be altered.

Deleting an email from an individual workstation will not eliminate it from the various systems across which it has been transmitted.

Inspection

At any time, employees may be asked to produce devices for inspection. The purpose of these inspections is to ensure the employee is following company policy.
*See Exhibit 6* [GardaWorld Employee Handbook at p. 35 (emphasis added)]

After being terminated on August 26, 2022, Plaintiff Cooper promptly filed her Charge of Discrimination with the EEOC on September 22, 2022, less than thirty days after her termination. *See Exhibit 7* [Charge of Discrimination]. Therefore, even if GardaWorld's retention policy required destruction of any documents after even a minimum of thirty days, all communications which are the subject of this Motion should have been subject to a 'litigation hold' pursuant to  Zubulake and its progeny.

To date, Defendant GardaWorld has wholly ignored Plaintiff's request for this critical electronically stored information. Plaintiff Cooper seeks to compel full and complete responses to their discovery requests as to Mr. Roberts' communications with Plaintiff Cooper sent from or received by Mr. Roberts' work-issued cell-phone, and other communications sent from or received by Mr. Roberts' work-issued cell-phone regarding, related to or referencing any of the acts or omissions which serve as a basis for the claims alleged in Plaintiff Cooper's Charge of Discrimination and Complaint. Given that Defendant GardaWorld did not appear to have satisfied their preservation obligations, and neither Mr. Engel nor their counsel appropriately reviewed, collected, or produced any responsive text messages or other relevant electronically stored information, it is is necessary to order that Defendant GardaWorld provide Mr. Roberts' work-issued cell phone and SIM card for a complete forensic examination at Defendant's expense, including whether any information has been deleted. The forensic analysis should

further include review of Mr. Roberts' work-issued cell phone cloud storage, internal and external storage devices, and any work-related social media accounts or email accounts for relevant text , email, and/or other electronic communications, including an analysis of whether any such communications have been deleted. Should such a review reveal that Defendant GardaWorld failed to preserve text messages or other electronic communications, Plaintiff Cooper intends to seek all additional available remedies, including but not limited to an adverse instruction against Defendant GardaWorld at the trial of this matter.

Federal Rule of Civil Procedure 34(a)(1) permits the inspection, testing or sampling of a party's ESI, and a court should only compel a forensic examination of a cell phone or other personal electronic device when such an examination will reveal information that is relevant to the claims and defenses in the pending matter and when such an examination is proportional to the needs of the case given the cell phone user's privacy interest in the contents of his cell phone. *See* Federal Rule of Civil Procedure 34(a)(1); *see also* Hardy v. UPS Ground Freight, Inc., No. 3:17-cv-30162-MGM, 2019 U.S. Dist. LEXIS 121277, 2019 WL 3290346 (D. Mass. July 22, 2019.

Here, Defendant GardaWorld's own actions have necessitated this motion. This Defendant and their counsel had ample opportunity to retrieve the requested electronically stored information from Mr. Roberts prior to his termination, and especially after being placed on notice of Plaintiff Cooper's Charge of Discrimination. The did not, and a forensic examination is necessary to determine what, if any, other messages remain available for production.  Therefore, Defendant GardaWord, due to their own conduct, shall bear the burden of the forensic examination.

II.    **DEFENDANT GARDAWORLD SHOULD BE ORDERED TO PAY PLAINTIFF'S ATTORNEY FEES RELATED TO THIS DISCOVERY ISSUE, INCLUDING THE AMOUNTS EXPENDED ON THIS MOTION.**

As this honorable Court is aware, Federal Rule of Civil Procedure 37(a)(5)(A) requires the Court to award the moving party its reasonable expenses, including attorneys' fees incurred in making the motion, except in limited circumstances which do not exist in this case. Plaintiff's counsel has attempted in good faith to resolve this issue with Defendant GardaWorld without success. Defendant GardaWorld's actions and position are unjustified. Therefore, Plaintiff's counsel request that this honorable Court award them their reasonable costs and attorneys' fees associated with this issue, including those incurred in filing the instant Motion.

*Conclusion*

Plaintiff Cooper respectfully request that this Court enter an Order requiring Defendant GardaWrld to retain a forensic expert at Defendant GardaWorld's sole expense to (1) conduct a full and complete analysis of Tavon Roberts' work-issued cellphone, corresponding SIM card, and email account used during the time period relevant to the allegations of Plaintiff's Complaint, and produce relevant text and/or email communications, including an analysis of whether any such communications have been deleted, (2) review the cloud storage, internal and external devices affiliated with Tavon Roberts' work-issued cellphone and produce relevant text and/or email communications, including an analysis of whether any such communications have been deleted, and (3) order that Defendant GardaWorld pay Plaintiff's reasonable attorneys' fees and costs incurred in their efforts to resolve these issues, including the costs and fees associated with the instant Motion.

Respectfully submitted,

Donald Huskey /s/
Donald R. Huskey (Bar No. 22981)
CPF NO. 0712010286
Law Offices of Donald R. Huskey LLC
9419 Lyonswood Drive
Owings Mills, Maryland 21117
443-929-1001
dr.huskey@gmail.com

Governor Jackson, III /s/
Governor Jackson, III (Bar No. 27673)
Law Office of Governor Jackson,III, LLC
400 E. Joppa Road,
Suite 50
Towson, Maryland 21286
(410) 528-5150
(410) 528-1055 (f)
gjackson@governorjacksonlaw.com
CPF #0412140364

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify on this 9th day of January 2025, that I electronically filed the foregoing

Motion to Compel thereby effectuating service upon all counsel.

Governor Jackson, III /s/
Governor Jackson, III