**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| YVETTE COOPER, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:23-cv-03116-JRR |
| | : | |
| v. | : | |
| | : | |
| BALTIMORE GAS AND ELECTRIC | : | |
| COMPANY and WHELAN SECURITY | : | |
| MID-ATLANTIC LLC, d/b/a | : | |
| GARDAWORLD SECURITY SERVICES | : | |
| d/b/a GARDAWORLD, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS BASED ON SPOLIATION OF TEXT MESSAGES AND OTHER COMMUNICATIONS**

Anessa Abrams (Bar No. 12581)
FordHarrison LLP
2000 M Street, N.W.
Suite 505
Washington, DC 20036
(202) 719-2000
aabrams@fordharrison.com


*Counsel for Defendant Whelan Security*
*Mid-Atlantic LLC d/b/a GardaWorld*
*Security Services d/b/a GardaWorld*

Lindsey A. White (Bar No. 29183)
Justin T. Liberatore (Bar No. 30277)
Jackson Lewis PC
2800 Quarry Lake Drive, Suite 200
Baltimore, MD 21209
(410) 415-2000
lindsey.white@jacksonlewis.com
justin.liberatore@jacksonlewis.com


*Counsel for Defendant Baltimore Gas and*
*Electric Company*

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

FACTUAL BACKGROUND ...........................................................................................2

    A. Plaintiff's Allegations .........................................................................................2

    B. Defendants' Discovery Requests and Plaintiff's Responses.................................3

    C. Plaintiff's Representations Regarding the "Trade" of Her
       Cell Phone............................................................................................................5

    D. The Court's December 20, 2024 Minute Order and Subsequent
       Communications from Plaintiff's Counsel .............................................................6

    E. Plaintiff's Admissions Regarding the Incomplete Nature of the
       Produced Text Messages Between Plaintiff and Mr. Roberts
       and Plaintiff's Failure to Preserve Communications with Mr. Roberts.............................7

    F. Defendants' Motion to Compel and this Court's Order Concerning
       the Motion to Compel ..........................................................................................9

    G. The Parties Subsequent Actions in Accordance with the Order on
       Defendants' Motion to Compel ..........................................................................10

ARGUMENT .................................................................................................................12

    A. Plaintiff Had a Duty to Preserve Her Text Messages with Tavon
       Roberts and Their Facebook Messenger Communications .................................13

    B. Plaintiff's Text Communications and Facebook Messenger
       Communications with Tavon Roberts Are Lost and Cannot
       Be Restored or Replaced From Another Source ...................................................14

       1. The Text Messages Between Plaintiff and Mr. Roberts...............................14

       2. The Facebook Messenger Communications Between
          Plaintiff and Mr. Roberts..........................................................................16

    C. The Loss of the Communications Is Due to Plaintiff's – and
       Her Counsel's – Failure to Take Reasonable Steps to Preserve
       the Communications ...........................................................................................16

D.  Defendants Are Prejudiced by the Loss of the Communications,
Per Rule 37(e)(1)....................................................................................................17

E.  Plaintiff Acted With the Intent to Deprive Defendants of the
Communications, Per Rule 37(e)(2) .....................................................................18

CONCLUSION.............................................................................................................19

In accordance with the Court's April 4, 2025 Letter Order and Opinion to Counsel (ECF No. 78), and pursuant to Federal Rule of Civil Procedure 37, Defendants Baltimore Gas and Electric Company ("BGE") and Whelan Security Mid-Atlantic LLC, d/b/a GardaWorld Security Services, d/b/a GardaWorld ("GardaWorld") (collectively, "Defendants") have moved for an Order dismissing Plaintiff's Complaint, in its entirety and with prejudice, as a sanction for Plaintiff's and/or her counsel's spoliation of the text communications and other communications between Plaintiff and Tavon Roberts that are central to this litigation. Defendants further moved for an Order requiring Plaintiff and her counsel, jointly and severally, to pay Defendants' reasonable attorneys' fees and costs related to these issues, including the costs and fees associated with the instant Motion. Defendants submit this Memorandum of Law in support of their Motion.

## **INTRODUCTION**

Plaintiff has filed a multi-count Complaint against Defendants that centers around the allegation that former GardaWorld Captain Tavon Roberts sexually harassed her. Defendants assert the alleged relationship between Plaintiff and Mr. Roberts was consensual – a conclusion which is abundantly clear from the sampling of text messages that Plaintiff has cherry-picked and has produced in this matter.

But the full stream of text messages and Facebook communications between Plaintiff and Mr. Roberts are critical to this litigation. As this Court has previously recognized, "text messages and other communications play a prominent role in Plaintiff's complaint." ECF No. 72, p. 1. Despite their vital role in this case, it is obvious upon review of the screenshots of text messages used to draft Plaintiff's Charge of Discrimination ("Charge") and Complaint – the screenshots produced by Plaintiff in discovery – that the messages are cut-off and incomplete, and both embedded and attached information is inaccessible. This is made even more egregious by

Plaintiff's admission that she and Mr. Roberts communicated on a daily basis. Despite the obvious deficiencies with the screenshots, neither Plaintiff nor her counsel took any steps to preserve this crucial evidence and, as noted herein, the evidence is no longer obtainable or accessible. As this Court noted, "[t]he complete catalog of relevant messages is now unavailable." ECF No. 78, p. 2. Plaintiff even went so far as to block Mr. Roberts on Facebook – after filing her Charge – without preserving the Facebook messenger communications, thereby losing all access to those communications as well.

Plaintiff had an obligation to preserve her text and other communications with Mr. Roberts well before her phone was damaged. Indeed, she filed a Charge approximately one month after she walked off the job, at which point her obligation to preserve relevant evidence was clearly triggered. However, she and her counsel failed to take any steps to do so, and the information cannot be restored or replaced. Plaintiff's conduct was intentional. Defendants have been deprived of the communications for use in this case, thereby severely prejudicing their defense. Plaintiff's egregious conduct warrants sanctions, and the only appropriate sanction under the circumstances is dismissal of this action in its entirety, with prejudice. Plaintiff and her counsel should also be ordered, jointly and severally, to pay Defendants' attorneys' fees and costs associated with this Motion and other efforts to bring Plaintiff's failure to preserve before the Court.

## **FACTUAL BACKGROUND**

### A. **Plaintiff's Allegations**

On September 22, 2022, Plaintiff signed an administrative Charge, which she subsequently filed with the Equal Employment Opportunity Commission ("EEOC"), wherein she quotes purported text communications between herself and Mr. Roberts. Exh. A. This Charge was signed under penalties of perjury. *Id.*

Plaintiff subsequently filed her Complaint in this action, wherein she again extensively quotes purported text communications between herself and Mr. Roberts. *See* ECF No. 8, pp. 20-24.

**B.      Defendants' Discovery Requests and Plaintiff's Responses**

In its First Set of Requests for Production to Plaintiff, served October 9, 2024, GardaWorld requested, among other things, full and complete text messages and/or email communications, in native format, between Plaintiff and Mr. Roberts, and full and complete text messages and/or email communications, in native format, between Plaintiff and any current or former employee of GardaWorld. *See* Exh. B, Request for Production Nos. 13 & 14. GardaWorld further sought, among other things, all documents concerning the allegations underlying Plaintiff's claims; all documents to or from any person not a party to the litigation concerning Plaintiff's allegations; all documents reflecting or concerning any statement made by Plaintiff concerning the action or Plaintiff's allegations; documents concerning discussions or communications between Plaintiff and any current or former employee of GardaWorld concerning Plaintiff's claims or factual allegations; documents from any social media accounts concerning GardaWorld or any current or former employee, including Mr. Roberts; and documents concerning any written or oral statement or communication by any person related to Plaintiff's factual allegations. *See id.*, Request for Production Nos. 1, 2, 4, 5, 15, 20, 23.

In its First Set of Requests for Production to Plaintiff, served October 10, 2024, BGE similarly sought, among other things, all documents evidencing any communication with Plaintiff and any employee of BGE and full and complete text messages and/or email communications, in native format, between Plaintiff and any current or former employee of BGE. Exh. C, Request for Production Nos. 3, 9.

In response to the specific requests noted above propounded by GardaWorld, Plaintiff responded either "Produced," "Plaintiff does not recall any" (as it relates to documents from Plaintiff's social media accounts), or "None" (as it relates to communications over social media). *See* Exh. D, Response to Request Nos. 1, 2, 4, 5, 13, 14, 15, 20, 23. In response to the specific requests noted above propounded by BGE, Plaintiff responded "Produced." *See* Exh. E, Response to Request Nos. 3, 9.

As it relates to text messages, Plaintiff did not produce any text messages in native format between herself and Mr. Roberts. Rather, Plaintiff produced some screenshots of purported text messages between herself and Mr. Roberts. *See* Exh. F. Given the importance of the communications between Ms. Cooper and Mr. Roberts, Defendants requested all text message communications between them. Even a cursory review shows that the text communications produced are not full and complete, and were not produced in native format, as requested. *See id.* As reflected by the screenshots of the text messages, many of the communications are cut-off. *See id.* (by way of example only, *see* communication before Aug. 26 communication; Nov. 28, 2021 communication; communication before Nov. 29, 2021 communication; communication before Dec. 3, 2021 communication; Dec. 16, 2021 communication; Dec. 27, 2021 communication; Feb. 11 and Feb. 18, 2022 communications; June 28, 2022 communication; July 15, 2022 communication; July 23, 2022 communication; August 9, 2022 communication; communication before September 9, 2022 communication); *see also* ECF No. 78, p. 1.

In addition, embedded images and videos (which cannot be accessed via screenshots) are cut off. By way of example, on February 3, the following text exchange appears to have occurred:

Tavon Roberts: Stop playing with that pussy…….

Yvette Cooper: I can wait until I get home

4

Tavon Roberts: Make me a vid . . . baby

Exh. F (Feb. 3 communication). The next entry, on February 5, appears to be a video but it is cut-off and cannot be accessed. *Id.* (Feb. 5). As further reflected by the screenshots, some do not reflect a date, thereby rendering it impossible to ascertain complete, chronological conversations. *See generally* Exh. F. Moreover, there are significant gaps between the dates of messages. *See generally id.*;[1] *see also* ECF No. 78, p. 1.

Moreover, Plaintiff produced what appears to be limited communication between herself and Mr. Roberts via social media, *see* Exh. G, despite Plaintiff's testimony that she and Mr. Roberts communicated via Facebook messenger daily. Deposition of Yvette Cooper ("Cooper Dep.") (Exh. H) at 262-265.

**C.**     **Plaintiff's Representations Regarding the "Trade" of Her Cell Phone**

On December 2, 2024, Plaintiff's counsel indicated, among other things, that Plaintiff had traded in her personal cell phone on which she communicated with Mr. Roberts. *See* Exh. I; *see also* ECF No. 78, p. 1. Via email dated December 11, 2024, Plaintiff's counsel explained that Plaintiff traded in her cell phone on September 4, 2024 at a T-Mobile Metro Store in Baltimore. Exh. J.

---

[1] Mr. Roberts is a former GardaWorld employee. Plaintiff subpoenaed him for deposition on December 16, 2024, but Mr. Roberts did not appear. *See* ECF No. 52. Plaintiff filed a Motion for Civil Contempt and to require him to appear for his deposition. *See id.* BGE issued a subpoena duces tecum for Mr. Roberts, but he evaded service. The subpoena duces tecum sought complete text messages between Mr. Roberts and Ms. Cooper, as well as any other communications *(e.g.,* email or Facebook messenger). Mr. Roberts has not been deposed and no communications have been obtained from Mr. Roberts.

**D.     The Court's December 20, 2024 Minute Order and Subsequent Communications from Plaintiff's Counsel**

In response to a letter by Defendants seeking a pre-motion conference, by Paperless Order dated December 20, 2024, the Court authorized Defendants to file a motion regarding the texts and other electronic communications between Plaintiff and Mr. Roberts. ECF No. 51.

After the Court issued its Paperless Order, Plaintiff's counsel stated – for the first time – that Plaintiff "***now*** has the old phone in her possession." Exh. K (emphasis added). Plaintiff explained she took her phone to a repair store, where they could not fix it, so she subsequently went to Mobil Lizard in Baltimore to get a new phone. Exh. L. Plaintiff included a picture of what she purports is the relevant cell phone, demonstrating it is smashed/broken. *See id.* Plaintiff did not provide any explanation for when or how the cell phone was smashed, despite obligations to preserve it. *See id.*; *see also* ECF No. 78, p. 1.

On December 23, 2024, Plaintiff's counsel provided an Affidavit of Ms. Cooper. Exh. M. Paragraph 2 provides, in part: "Prior to filing my Charge of Discrimination, I created screenshots of all text messages between myself and Tavon Roberts to the best of my ability and provided these screenshots to my attorney." *Id.*, at ¶ 2. Plaintiff further stated she took the cell phone to a repair store in September 2024 "to attempt to have it fixed because of a cracked shell cover" but was informed they could not fix the phone. *Id.,* at ¶ 3. Plaintiff's Affidavit is devoid of any information as to when or how she cracked the cell phone from which she communicated with Mr. Roberts, and is devoid of any information as to whether Plaintiff's text messages with Mr. Roberts were backed up to the cloud, saved on a computer or laptop, saved on an external storage device, or saved anywhere, prior to the damage to her phone. *See id.*

6

**E.** **Plaintiff's Admissions Regarding the Incomplete Nature of the Produced Text Messages Between Plaintiff and Mr. Roberts and Plaintiff's Failure to Preserve Communications with Mr. Roberts**

Plaintiff testified she communicated with Mr. Roberts every day during the relevant period from late November 2021 through July 2022. *See* Cooper Dep. (Exh. H) at 83, 89, 262-263. This notwithstanding, Plaintiff admitted that the screenshots of the text message communications between herself and Mr. Roberts which were produced in discovery are cut-off, incomplete, and do not contain attached and/or embedded photos and videos. *Id.* at 73, 79, 82, 89, 93, 97-98, 100-101, 104, 106-109, 111, 114, 116-118, 183. In fact, in one text message, Mr. Roberts asked Plaintiff to send a "vid" of Plaintiff "playing with that p*ssy." *Id.* at 100-101; *see also* Exh. F (Feb. 3 communication). The following text entry in the screenshot appears to be the top third of a video but nothing else, and no video was produced. Cooper Dep. (Exh. H) at 100-101; *see also* Exh. F (Feb. 5 communication). Plaintiff testified it was her bedroom. Cooper Dep. (Exh. H) at 101. Plaintiff testified that she had "no idea" where text messages were from December 5 to December 15, 2021; December 27, 2021 to January 6, 2022; January 6 to January 22, 2022; January 25 to February 3, 2022; February 5 to February 11, 2022; February 11 to February 18, 2022; February 18 to March 29; 2022; April 17 to June 25, 2022; July 23 to August 5, 2022; and August 5 to August 26, 2022. Cooper Dep. (Exh. H) at 83, 89, 93-94, 97, 102, 106, 107, 114, 118-119.

During a meeting between counsel on December 16, 2024, Plaintiff's counsel – remarkably – confirmed that *they never reviewed the text messages between Plaintiff and Mr. Roberts; rather, they simply relied upon the screenshots Plaintiff provided to them*. Abrams Dec. (ECF No. 53-29) ¶ 4. Plaintiff admitted in her deposition that she never downloaded the entire text stream between herself and Mr. Roberts, and that her counsel never reviewed the entire text stream of communications:

Q: Did you ever download the entire text message stream between you and Mr. Roberts?

A: No.

Q: Okay when you took screenshots of the texts between you and Mr. Roberts, were either of your attorneys with you reviewing the messages that you screenshotted?

A: No.

. . .

Q: Did [your attorneys] look at your phone and look at the text messages between you and Mr. Roberts as they appeared on your phone?

A: No.

Cooper Dep. (Exh. H) at 57-59.

Plaintiff further testified she intentionally destroyed her communications with Mr. Roberts via Facebook. Cooper Dep. (Exh. H) at 59-61, 264-265. Plaintiff testified that she communicated with Mr. Roberts *every day* on Facebook Messenger, *id.* at 262-265, yet Plaintiff only produced approximately two communications which appear to be from Facebook. When questioned about this in her deposition, Plaintiff responded, "[w]ell I don't know what to tell you." *Id.* at 265. Indeed, Plaintiff confirmed that she failed to preserve, and even prevented access to, the Facebook messages approximately a year prior to her deposition conducted in January 2025 – long *after* filing her Charge with the EEOC and after filing the instant lawsuit:

Q: Did you and Mr. Roberts communicate by Facebook Messenger?

A: Yes.

Q: And do you still have those messages?

A: No.

. . .

Q: So you blocked him. Did you delete the messages?

A: It – he's not no longer on – on there at all, period.

. . .

Q: When was this?

A: That I blocked him?

8

Q: That you no longer had access to the messages.
A: Oh, I want to say probably a year.
Q: A year ago?
A: A year ago.
Q: Okay. So after this lawsuit was filed?
A: Yeah, I erased – yeah, blocked him.
Q: Well, you just said you "erased." Did you erase something?
A: No, I blocked him.
Q: You blocked him. So certainly after you filed your charge of discrimination with the EEOC was when you blocked him?
A: Yes.

Cooper Dep. (Exh. H) at 59-61.

**F.    Defendants' Motion to Compel and this Court's Order Concerning the Motion to Compel**

On December 27, 2024, Defendants filed a Motion to Compel and Request for Order for Forensic Examination Relating to Plaintiff's Cell Phone and Electronic Communications (ECF No. 53).

By Summary Opinion and Order Regarding Both Parties' Respective Motions to Compel (ECF Nos. 53 and 59), dated February 5, 2025, this Court granted in part and denied in part Defendants' Motion to Compel. *See* ECF No. 72. The Court ordered a forensic examination of Plaintiff's cell phone and SIM card, noting Plaintiff's counsel represented "there are no responsive email messages, nor does [Plaintiff] have any physical storage devices (such as hard drives, thumb drives, etc.) other than the cell phone and SIM card at issue." ECF 72, p. 2 & n.1. The Court further ordered a forensic examination of Plaintiff's iCloud account, including ordering Plaintiff, who at that time could not recall the credentials for her iCloud account, to visit the Apple store in Towson, Maryland to reset her credentials. *Id.*, p. 2. Plaintiff was ordered to retain James Vaughn of iDiscovery Solutions to perform the forensic examinations in accordance with search protocols agreed upon between the parties. *Id.*, pp. 2-3. Plaintiff was further ordered to provide her authorization to allow T-Mobile (her cell phone carrier) to produce information in response to a

9

subpoena to be served by Defendants. *Id*., p. 3. Recognizing that T-Mobile does not maintain text messages but maintains a log of the date, time, and telephone number of incoming and outgoing messages, the Court noted such a log "would be a good cross check on whether all responsive messages between the relevant parties during the relevant time period have been recovered and produced." *Id.* The Court denied, without prejudice, Defendants' request for sanctions due to spoliation pending "some insight into the extent to which any missing data can be recovered." *Id.*

**G.     The Parties Subsequent Actions in Accordance with the Order on Defendants' Motion to Compel**

In accordance with the Court's February 5, 2025 Order, Plaintiff retained Mr. Vaughn to conduct a forensic examination of Plaintiff's cell phone and iCloud account, the parties agreed upon search protocols for the examination, and Plaintiff reset the credentials for her iCloud account.

Mr. Vaughn, however, was unable to conduct a forensic examination of Plaintiff's cell phone because Plaintiff does not recall the password for the phone, the phone cannot be opened via facial recognition, and any attempt to re-set the password will destroy the data on the phone. *See* ECF No. 75, p. 1; ECF No. 78, p. 1. Plaintiff's counsel contacted another vendor, but they too cannot unlock Plaintiff's phone. *See* ECF No. 75, pp. 1-2.

Moreover, Mr. Vaughn is only able to access a portion of Plaintiff's iCloud account. As Mr. Vaughn noted, "the only data source that [iDiscovery Solutions] has been able to access are emails ([cooperyvette@icloud.com)](mailto:cooperyvette@icloud.com)." Exh. N. Mr. Vaughn provided to defense counsel 25 emails (some with attachments) from Plaintiff's iCloud account. There was only one email between Plaintiff and Mr. Roberts – a May 15, 2022 email from Plaintiff to Mr. Roberts regarding vacation time.

Mr. Vaughn confirmed he "has not been given access to any text messages." *Id.* Mr. Vaughn explained:

> To the extent text messages exist, they would either be located on the iPhone itself, or possibly in the synced messages of Yvette Cooper's iCloud account, but this portion of her iCloud account is inaccessible to us, because it wants a two-factor authorization code from the iPhone that we cannot currently unlock. We were only able to access her iCloud email because it did not require two-factor authorization from the locked iPhone.

*Id.* Based on the foregoing, there is currently no means by which to retrieve Plaintiff's text messages and conduct a forensic examination of Plaintiff's cell phone or that portion of Plaintiff's iCloud account which remains inaccessible and, therefore, as confirmed by Mr. Vaughn, any text communications between Plaintiff and Mr. Roberts are not obtainable.

By Letter Order and Opinion to Counsel dated April 4, 2025, this Court denied Plaintiff's request that the Court Order Apple, Inc. to unlock Plaintiff's cell phone. *See* ECF No. 78. Plaintiff has subsequently sent a letter to the General Counsel of Apple seeking assistance to try to unlock Plaintiff's cell phone.

In accordance with the Court's February 5, 2025 Order, GardaWorld issued a subpoena to T-Mobile, with Plaintiff's written authorization, seeking "all records, including but not limited to detail logs and text communications, for cell phone number 410-670-1805 for the period January 1, 2021 to present." Exh. O. T-Mobile responded to the subpoena on March 27, 2025. While T-Mobile produced a log, in Excel format, consisting of approximately 2,300 pages, the log has a start date of March 7, 2023. There are no entries prior to that date. *See* Exh. P (consisting of the first 10 pages of the spreadsheet for illustration purposes). T-Mobile further produced a document entitled "Objection" which stated, among other things, "T-Mobile hereby objects to the referenced legal demand and is unable to respond to your request for the following reason(s): In regard to identifier(s) ending in 1805, Call records on prepaid and wholesale accounts are stored for approximately 24 months following usage. All available records have been provided." Exh. Q.

Thus, Defendants cannot even obtain a log of communications between Plaintiff and Mr. Roberts for the relevant time period (through August 2022).

## ARGUMENT

"Spoliation occurs when a party destroys or materially alters evidence or fails to preserve property that could be used as evidence in a pending or reasonably foreseeable case." *Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 264 (D. Md. 2023). Sanctions for spoliation of electronically stored information ("ESI") are appropriate when: "'(1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery.'" *Id.* at 265; *see also Fowler v. Tenth Planet, Inc.*, 673 F. Supp. 3d 763, 767 (D. Md. 2023); *Modern Remodeling, Inc. v. Tripod Holdings, LLC*, CCB-19-1397, 2021 WL 3852323, at *5 (D. Md. Aug. 27, 2021).

If these factors are satisfied, Federal Rule of Civil Procedure Rule 37 provides two avenues by which sanctions can be imposed:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>    (A) presume that the lost information was unfavorable to the party;
>    (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>    (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e); *see also Fowler*, 673 F. Supp. 3d at 767. Dismissal is an appropriate sanction where the spoliating party acted with the intent to deprive the other party of the use of the

information in litigation. *CSX Transp., Inc. v. Spiniello Glob., Inc.*, No. CV JKB-19-2976, 2023 WL 5515979, at *10 (D. Md. Aug. 25, 2023). Plaintiff's conduct warrants the ultimate sanction of dismissal.

**A.      Plaintiff Had a Duty to Preserve Her Text Messages with Tavon Roberts and Their Facebook Messenger Communications**

"'The duty to preserve evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'" *Doe v. Vanderpool,* Civil No. TJS-22-1915, 2024 WL 4881928, at *2 (D. Md. Nov. 22, 2024) (quoting *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). The decision to pursue a claim triggers the duty to preserve. *See Jennings*, 679 F. Supp. 3d at 292; *Modern Remodeling,* 2021 WL 3852323, at *6. The duty to preserve encompasses electronic communications and documents, such as emails, text messages, or other documents created by computer. *See Zubulake v. UBS Warburg*, *LLC*, 220 F.R.D. 212, 217-18 (S.D.N.Y. 2003) (holding in employment discrimination case that defendant company had duty to preserve emails related to claims asserted by plaintiff); *Felder v. MGM Nat'l Harbor, LLC*, Civil Action No. PJM-18-3405, 2024 WL 3690779, at *8 (D. Md. Aug. 7, 2024) (duty to preserve is triggered by the filing of a charge of discrimination); *see also Modern Remodeling,* 2021 WL 3852323, at *7 ("[T]he defendants had a duty to preserve text messages").

Plaintiff clearly had a duty to preserve her communications with Mr. Roberts. As set forth above, Plaintiff admits she and Mr. Roberts communicated via text message on a daily basis. Cooper Dep. (Exh. H) at 83, 89. Plaintiff squarely put her text communications with Mr. Roberts front and center in this lawsuit by relying heavily on them in her Charge (which she signed in September 2022) and her Complaint (which was filed in September 2023). The text messages are, therefore, central to the claims and defenses in this litigation. *See Doe*, 2024 WL 4881928, at *3

(evidence is relevant if "'a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.'") (quotation omitted).

Similarly, Plaintiff testified that she and Mr. Roberts communicated on a daily basis via Facebook messenger over the course of her employment with GardaWorld and her relationship with Mr. Roberts. Cooper Dep. (Exh. H) at 262-265. Just as with her text communications, Plaintiff's Facebook messenger communications with Mr. Roberts during the course of their relationship are central to this litigation. Moreover, Plaintiff testified that within approximately one month of her separation from employment with GardaWorld, Mr. Roberts threatened her by calling her a snitch over Facebook messenger. Cooper Dep. (Exh. H ) at 270-271. Indeed, Plaintiff's Complaint alleges that after Mr. Roberts' termination of employment with GardaWorld – which was within days of Plaintiff's separation of employment – Mr. Roberts "texted her several verbal insults." Compl. ¶ 49. Thus, the Facebook communications are central to this litigation as well.

Given that the text messages and Facebook messenger communications were Plaintiff's primary mode of communication with Mr. Roberts concerning their relationship, the duty to preserve such communications is clear. *See Fowler*, 673 F. Supp. 3d at 773-74.

**B.      Plaintiff's Text Communications and Facebook Messenger Communications with Tavon Roberts Are Lost and Cannot Be Restored or Replaced From Another Source**

"Information is lost if it is irretrievable from another source." *Modern Remodeling,* 2021 WL 3852323, at *8.

**1.      The Text Messages Between Plaintiff and Mr. Roberts**

Neither Plaintiff nor her counsel downloaded the entire text message stream between Plaintiff and Mr. Roberts or backed up the text messages to a computer or other storage device. Cooper Dep. (Exh. H) at 53, 57. Plaintiff simply took screenshots of selected text messages and

provided them to her counsel, without her counsel looking at or reviewing the original messages, *id.* at 57-59, despite the fact that the messages clearly reflect on their face that they are incomplete and cut-off. Plaintiff's self-collection was wholly improper. *See Herman v. City of New York*, 334 F.R.D. 377, 386 (E.D.N.Y. 2020) ("It is not appropriate to take a client's self-collection of documents, assume it is complete, and not take steps to determine whether significant gaps exist"); *see also Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-CV-3687 (ALC) (RWL), 2023 U.S. Dist. LEXIS 130463, at *10, 2023 WL 4760581, at *3 (S.D.N.Y. July 26, 2023) (Court awarded discovery sanctions after finding that "counsel failed to exercise sufficient quality control over collection by Hedgeye's personnel."); *Vander Pas v. Bd. of Regents of the Univ. of Wis. Sys.*, 664 F. Supp. 3d 893, 906 (E.D. Wis. 2023) (noting that "counsel should be wary of permitting clients to self-collect their ESI" and explaining the numerous problems associated therewith).

As the Court has recognized, and as set forth in detail above, "[t]he complete catalog of relevant messages is now unavailable." ECF No. 78, p. 2. Plaintiff dropped her cell phone so many times that it apparently became inoperable in the Fall of 2024, Cooper Dep. (Exh. H) at 53-54; Exh. M, and her text messages did not transfer to her new cell phone. Cooper Dep. (Exh. H) at 55. Despite the retention of a forensic expert, the text communications are lost. Plaintiff cannot unlock the relevant cell phone either via a password or facial recognition, the only portion of her iCloud account that is accessible does not contain text messages, and the other portions of Plaintiff's iCloud account are inaccessible. Moreover, despite issuing a subpoena to T-Mobile, Defendants cannot even determine the date/time of text communications between Plaintiff and Mr. Roberts as T-Mobile does not have the data for the relevant time period. Defendants have exhausted *all other means* of obtaining a full copy of the text messages between Plaintiff and Mr. Roberts.

### 2. The Facebook Messenger Communications Between Plaintiff and Mr. Roberts

As noted above, Plaintiff blocked Mr. Roberts on Facebook, thereby losing access to all Facebook communications between them, including their daily communications over the course of Plaintiff's employment with GardaWorld and her relationship with Mr. Roberts. She did not download the messages before blocking Mr. Roberts, and did not ensure that all messages were captured via screenshot. Cooper Dep. (Exh. H) at 263, 277. As a result, and by Plaintiff's own admission, the complete Facebook messenger communications no longer exist, *see id.* at 59-61, 264-265, and cannot be provided via another source.

### C. The Loss of the Communications Is Due to Plaintiff's – and Her Counsel's – Failure to Take Reasonable Steps to Preserve the Communications

As noted herein, Plaintiff took absolutely no steps to preserve the communications. She self-collected the text messages, and her counsel never reviewed – or preserved – the entire communication stream, despite the obvious fact that the screenshots of the text messages are incomplete and cut-off. And Plaintiff took no steps to back up the text messages to a computer or other storage device. Indeed, Plaintiff clearly took no steps to preserve the cell phone at issue, as she dropped it so many times that it became inoperable and she obtained a new cell phone in the Fall of 2024 – two years after she submitted her Charge – but the text messages did not transfer to her new phone. Given the critical importance of the text communications, as evidenced by their quotation in Plaintiff's Charge and Complaint:

> it was not reasonable to simply maintain those text messages only on [plaintiff's] phone without at least verifying that they were being backed up to a cloud service or otherwise taking affirmative steps to create a copy given the not uncommon occurrence of a phone getting damaged, lost, or stolen. This is especially so when the data loss occurs well into the litigation, when a party has been represented by counsel, and where, as here, a party is not a stranger to the litigation process and the duties that surround it.

16

*Fowler*, 673 F. Supp. 3d at 774; *see also Modern Remodeling,* 2021 WL 3852323, at \*10 (failure to back up messages to cloud server is unreasonable). The fact that Plaintiff and her counsel recognized the importance of the communications by quoting them in her Charge and Complaint, yet took absolutely no steps to preserve them, is not only unreasonable but ironic. Plaintiff and her counsel had ample opportunity to save the text messages after filing the Charge in 2022 and failed to do so.

The same is true for the Facebook messenger communications. Plaintiff – and her counsel – clearly deemed it important to screenshot certain communications, but failed to preserve the entire message stream reflecting, by Plaintiff's admission, daily communication. Plaintiff admits she blocked Mr. Roberts on Facebook without preserving the messages and that the messages are now lost.

**D.      Defendants Are Prejudiced by the Loss of the Communications, Per Rule 37(e)(1)**

"'The kind of prejudice sufficient to trigger Rule 37(e)(1) occurs 'when, as a result of the spoliation, the party claiming spoliation cannot present 'evidence essential to its underlying claim.'"" *Fowler*, 673 F. Supp. 3d at 767; *Modern Remodeling,* 2021 WL 3852323, at \*10. Prejudice is established where the moving party demonstrates a "likelihood that the lost evidence would have been favorable to the moving party's case." *Modern Remodeling,* 2021 WL 3852323, at \*10.

The text messages and Facebook messenger communications are essential evidence. The screenshots of the text messages make clear that the relationship between Plaintiff and Mr. Roberts was consensual – a critical factor to Plaintiff's claims. The messages are the only potential evidence of the full scope, nature, and circumstances of Plaintiff's relationship with Mr. Roberts, by which they communicated daily during Plaintiff's employment with GardaWorld. The fact that

the communications do not exist prejudices Defendants' ability to defend against Plaintiff's claims. Based on the limited information that was produced, there is no doubt that the full stream of communications would further bolster Defendants' position that Plaintiff's relationship with Mr. Roberts was consensual. The consensual nature of their relationship is patently obvious via the produced text messages, and Plaintiff's deposition testimony regarding the texts and the relationship in general. *See, e.g.,* Cooper Dep. (Exh. H) at 100, 103-04, 105-06, 113.  Indeed, Plaintiff even invited Mr. Roberts on vacation with her to Cancun in May 2022. *Id.* at 102. Notably, Plaintiff admitted she only ended her relationship with Mr. Roberts because he was involved with another individual at the same time. *Id.* at 91-92, 117. Defendants are prejudiced, as their ability to present their case is compromised by the missing evidence. *Doe*, 2024 WL 4881928, at *3.

**E.      Plaintiff Acted With the Intent to Deprive Defendants of the Communications, Per Rule 37(e)(2)**

As set forth above, Defendants are clearly prejudiced, warranting sanctions under Rule 37(e)(1). As demonstrated herein, however, even more severe sanctions are warranted under Rule 37(e)(2), for which prejudice is not required. *Modern Remodeling,* 2021 WL 3852323, at *13.

Rule 37(e)(2) sanctions are appropriate where the "'party acted with the *intent to deprive* another party of the information's use in litigation'" by engaging in "willful or intentional conduct." *Jennings*, 679 F. Supp. 3d at 294-95 (emphasis in original) (quoting Fed. R. Civ. P. 37(e)(2)); *see also Fowler*, 673 F. Supp. 3d at 767. "'Willfulness is equivalent to intentional, purposeful, or deliberate conduct.'" *Jennings*, 679 F. Supp. 3d at 295 (quotation omitted).  "When a party alleging spoliation shows that the alleged spoliator acted willfully or in bad faith in failing to preserve the evidence, 'the relevance of that evidence is presumed in the Fourth Circuit.'" *Doe*, 2024 WL 4881928, at *3 (quotation omitted).

Plaintiff's actions were clearly intentional, purposeful, and deliberate, designed to deprive Defendants of the evidence. Plaintiff cherry-picked text messages to screenshot, which should have been apparent to her counsel on their face that they were cut-off and incomplete. Absolutely no steps were taken – by either Plaintiff or her counsel – to preserve the text communications. Indeed, no steps were taken to preserve Plaintiff's cell phone from damage or destruction – or for Plaintiff to even write down the password to her cell phone so that it could be accessed later. The conduct was intentional, and the loss of the text communications was intentional to deprive Defendants access. Moreover, Plaintiff intentionally blocked Mr. Roberts on Facebook, knowing full well that would destroy the communications between them.

Plaintiff's conduct is intentional, willful and deliberate, warranting the most severe sanction. The most critical evidence in this case has been lost and destroyed and cannot be recovered despite significant effort. Defendants should not be hamstrung in their ability to defend against Plaintiff's claims because Plaintiff has deprived them of the best evidence of her relationship with Mr. Roberts. Plaintiff's conduct warrants dismissal of this matter in its entirety, with prejudice. In addition, Plaintiff and her counsel, jointly and severally, should be ordered to pay Defendants' attorneys' fees and costs incurred as a result of this issue, including but not limited to the amounts expended on this motion.

## CONCLUSION

Based on the foregoing, Defendants respectfully request this Court enter an Order dismissing Plaintiff's Complaint in its entirety, with prejudice.[2] Defendants further request this

---

[2] If the Court finds, for some reason, that dismissal is not appropriate, Defendants request the Court impose other sanctions on Plaintiff for her spoliation of the critical text messages and Facebook messenger communications, including but not limited to an adverse inference instruction and/or any other sanctions the Court deems appropriate.

Court enter an Order directing Plaintiff and her counsel, jointly and severally, to pay Defendants' attorneys' fees and costs incurred as a result of this issue, including but not limited to the amounts expended on this motion.

Respectfully submitted,

  /s/ Anessa Abrams                              /s/ Lindsey A. White                        
Anessa Abrams (Bar No. 12581)          Lindsey A. White (Bar No. 29183)
FordHarrison LLP                               Justin T. Liberatore (Bar No. 30277)
2000 M Street, N.W.                             Jackson Lewis PC
Suite 505                                            2800 Quarry Lake Drive, Suite 200
Washington, DC 20036                         Baltimore, MD 21209
(202) 719-2000                                   (410) 415-2000
aabrams@fordharrison.com                 lindsey.white@jacksonlewis.com
                                                        justin.liberatore@jacksonlewis.com

*Counsel for Defendant Whelan Security*     *Counsel for Defendant Baltimore Gas and*
*Mid-Atlantic LLC d/b/a GardaWorld*          *Electric Company*
*Security Services d/b/a GardaWorld*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of April, 2025, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS BASED ON SPOLIATION OF TEXT MESSAGES AND OTHER COMMUNICATIONS** to be electronically filed with the Court using the Court's CM/ECF electronic filing system, which will automatically send email notification of such filing to all counsel of record.

 /s/ Anessa Abrams_____
Anessa Abrams

WSACTIVELLP:114173185.1