IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **YVETTE COOPER,** | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Case No: 1:23-cv-03116-JRR |
| **BALTIMORE GAS AND ELECTRIC COMPANY,** *et al.,* | * | |
| | * | |
| *Defendants.* | | |

\* \* \* \* \* \* \* \* \* \* \* \*

**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION
REQUESTING RELIEF FOR THE SPOLIATION OF EVIDENCE
(ROBERTS' WORK PHONE)**

Before the Court is Plaintiff Yvette Cooper's Motion Requesting Relief for the Spoliation of Evidence Related to Tavon Roberts' Work-Assigned Cellphone. (ECF No. 88). Plaintiff asks the Court to enter judgment in her favor or, failing that, to give an adverse inference instruction to the jury at trial based on GardaWorld's failure to sequester Mr. Roberts' cellphone at the time of his separation from the company so as to preserve electronic evidence that might have existed on the phone. *Id*. at 9. The Court has also reviewed Defendant GardaWorld's Opposition (ECF No. 95) and Plaintiff's Reply (ECF No. 104). The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). As set forth more fully below, the undersigned recommends[1] that the trial judge, U.S. District Judge Julie R. Rubin, deny Plaintiff's Motion.

---

[1] Because Plaintiff seeks dispositive relief, the undersigned's authority as to such relief is limited to a "recommendation" to Judge Rubin pursuant to Local Rule 301.5.b. Additionally, although the request for an adverse inference jury instruction is non-dispositive and might be within the undersigned's authority pursuant 28 U.S.C. § 636(b) and Local Rule 301.5a, the undersigned nonetheless puts this in the form of a recommendation given that Judge Rubin, as the trial judge, should make any decisions regarding final jury instructions.

I.   **Background**

This sexual harassment and discrimination case was referred to the undersigned by Judge Rubin on January 8, 2025 for discovery and related scheduling. (ECF No. 56). Plaintiff contends that she was sexually harassed by her former supervisor, Tavon Roberts ("Mr. Roberts") while both worked for GardaWorld providing security services at Co-Defendant Baltimore Gas and Electric's ("BGE") facility. Plaintiff does not deny sexual activities with Mr. Roberts, but contends it was part of a quid pro quo arrangement whereby Plaintiff's conditions of employment depended upon her willingness to engage is such activities with Mr. Roberts. (ECF No. 8 at 15-17). She further alleges that when she ceased the activities, Mr. Roberts changed her conditions of employment for the worse and retaliated against her. *Id*. at 17-18. She claims in her complaint that this ultimately led to her termination on or about August 26, 2022. *Id*. at 18.

Shortly after her separation from employment, on August 29, 2022, Plaintiff alleges she provided some text messages between herself and Mr. Roberts to Major Roy Engle of GardaWorld to show the inappropriate nature of the relationship, and that Mr. Roberts was fired the next day as a result. *Id*. at 19; ECF 95-10 at 4. Plaintiff cites additional explicit text messages between herself and Mr. Roberts in her Complaint. *Id*. at 20-24. At her deposition, Plaintiff was asked whether any these explicit text exchanges were sent to Mr. Roberts' work phone and she responded "not to my knowledge." (ECF No. 95-2 at 82). Relatedly, Plaintiff has testified that to the best of her ability, she took screen shots of, and provided to counsel, all relevant texts between herself and Mr. Roberts. (ECF No. 92-2 at 1-2).

According to GardaWorld, Mr. Roberts surrendered his work phone to Major Roy Engel of GardaWorld at the time of his separation, and it was reissued to Mr. Roberts' replacement, Captain Ebony Wiley. (ECF No. 95-9 at 14). Major Engel testified that he had the phone 2-3 days

prior to reissuing it to Captain Wiley. *Id*. at 17. Captain Wiley verified that she received Mr. Roberts' former work phone in September of 2022. (ECF No. 95-14 at 8). When she received the phone, his contacts were still in it and his texts were as well. *Id*. at 11. His contacts and text messages remained on the phone. *Id*. at 11-12. She did not delete anything off the phone. *Id*. at 13. She had the cell phone until approximately January of 2025, when she was asked to turn it in to GardaWorld (after which time it has been in the possession of counsel).[2] *Id*. at 9.

By Summary Opinion and Order addressing both parties' previous motions to compel (ECF Nos. 53 and 59), dated February 5, 2025, this Court, *inter alia*, ordered a forensic examination of the work-issued cell phone previously assigned to Mr. Roberts to be conducted by James Vaughn of iDiscovery Solutions in accordance with search protocols agreed upon between the parties. (ECF No. 72 at 3). Mr. Vaughn created a forensic image of the phone at issue, and employed search terms agreed on by counsel, but found no explicit text messages. (ECF No. 95 at 8).

**II.    Legal Standard**

Plaintiff relies exclusively in her motion on the Court's inherent authority applicable to spoliation generally rather than the Federal Rules of Civil Procedure. (ECF No. 88 at 4-5). In matters of alleged spoliation of Electronically Stored Information ("ESI") however, the amended version of Federal Rule of Civil Procedure 37(e) provides the exclusive analytical framework. Plaintiff's failure to rely on the correct standard puts her analysis at odds with the current state of the law in important respects.

As the Advisory Committee notes make clear, the 2015 amendments to Rule 37(e) were specifically designed to remedy that lack of clarity and consistency in the pre-amendment ESI

---

[2] Per GardaWorld's counsel, Mr. Roberts' work-issued cell phone was maintained in a secure locked location in undersigned counsel's office since December 23, 2024, *see* ECF No. 64 at 10 n.5, until it was shipped by counsel's office via Federal Express to Mr. Vaughn. (ECF No. 95 at 8).

3

spoliation case law where, under the talisman of "inherent authority," a court was free to grant or deny any potential sanction based on any state of mind from negligence to intentional bad faith. To the extent that such pre-amendment cases are explicitly inconsistent with current Rule 37(e)—such as justifying dismissal or an adverse inference instruction on conduct falling short of a specific finding of intent to deprive—the Court no longer views them as persuasive in addressing spoliation of ESI. *See Fowler v. Tenth Planet, Inc.*, 673 F. Supp. 3d 763, 773 (D. Md. 2023); *Gov't Emps. Health Ass'n v. Actelion Pharms. Ltd.*, 343 F.R.D. 474, 482 (D. Md. 2023).

To trigger Rule 37(e), four initial criteria must be met: (1) the party was under a duty to preserve the ESI at issue; (2) the ESI at issue was not preserved; (3) the loss of the ESI was due to the party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e); *Fowler,* 673 F. Supp. 3d at 767; *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 2483800, at *4 (E.D.N.C. June 7, 2017) (other citations omitted). If these four criteria are met, Rule 37(e) offers two alternative paths.

The first, under Rule 37(e)(1), requires a court to make a finding of prejudice before sanctions may be warranted. The second, under Rule 37(e)(2), requires a court to make a finding that a party acted with the *intent* to deprive the opposing party of the ESI prior to imposing sanctions. *In re Ethicon, Inc.*, No. 2:12-CV-00497, 2016 WL 5869448, at *3 (S.D.W. Va. Oct. 6, 2016) (emphasis in original); *see also Mod. Remodeling v. Tripod Holdings, LLC,* No. CCB-19-1397, 2021 WL 3852323, at *10 (D. Md. Aug. 27, 2021).

The kind of prejudice sufficient to trigger Rule 37(e)(1) occurs "when, as a result of the spoliation, the party claiming spoliation cannot present 'evidence essential to its underlying claim.'" *Al-Sabah v. Agbodjogbe*, No. ELH-17-730, 2019 WL 4447235, at *5 (D. Md. Sept. 17,

2019) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522–23 (D. Md. 2010)). To justify the more severe sanctions of Rule 37(e)(2), as Plaintiff seeks here, the moving party must demonstrate that the failure to preserve was motivated by an intent to deprive the moving party of the use of the information in the litigation. *Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, SAG-18-3403, 2020 WL 1809191, at *4 (D. Md. Apr. 9, 2020). Negligent or even grossly negligent behavior will not suffice. Fed. R. Civ. P. 37(e) 2015 Advisory Committee Notes; *Mod. Remodeling*, 2021 WL 3852323 at *10. The burden of proof is on the party seeking sanctions, and the standard of proof in the Fourth Circuit appears to be "clear and convincing" evidence where, as here, relatively harsh sanctions are sought. *Id.*

**III.     Analysis**

Plaintiff has failed to put forth sufficient evidence of the four necessary elements to trigger the application of Rule 37(e) at all, let alone proven by clear and convincing evidence the intent required to show she is entitled to the remedies she seeks. To streamline its analysis, the Court will assume, *arguendo*, that there was a duty to preserve Mr. Roberts' work cellphone. However, Plaintiff has offered no facts to suggest that the phone was not adequately preserved.[3] While it is true that counsel did not take possession and control of the phone until December of 2024, well after suit was filed and after it had been reissued to Captain Wiley, Plaintiff presents no evidence that anything has been lost from the phone. As detailed above, Captain Wiley testified that when she received the phone, it still had Mr. Roberts' text messages on it, and she did not delete them. They have since been forensically searched by an outside expert using terms agreed to by the

---

[3] The Court acknowledges that in her Reply, Plaintiff for the first time presents extensive opinion from her expert witness as to how to conduct a proper internal investigation and preserve evidence generally, which presumably would include the evidence at issue. While the Court can consider such opinion in its analysis, it is not dispositive, especially where, as here, Plaintiff has not demonstrated that the steps taken by GardaWorld in fact resulted in any loss of data.

parties.  Although no explicit text messages were found, this is consistent with Ms. Cooper's testimony that her explicit texting with Mr. Roberts was not done to his work phone.  While it is true that her recollection could be flawed, there has been no additional evidence that any messages were deleted from Mr. Roberts' work phone.  In the absence of any evidence of a loss of data, Plaintiff simply cannot establish that she is entitled to any sanctions, let alone the more extreme sanctions she seeks.[4]

But even if Plaintiff could establish the threshold criteria necessary to invoke Rule 37(e), she has failed to present any evidence—let alone clear and convincing evidence—that there was any intent by GardaWorld to deprive her of relevant information, a showing that is necessary under Rule 37(e) for the two alternative sanctions she seeks.

Accordingly, the undersigned recommends that Plaintiff's motion, ECF No. 88, be denied.


Dated: May 15, 2025                                         /s/
                                                    J. Mark Coulson
                                                    United States Magistrate Judge

---

[4] The Court also notes Plaintiff's previously cited testimony where she indicates that she successfully took screen shots of all messages.  Taken to its logical extension, this would mean that if there had been any explicit texts that are now missing from Mr. Roberts' phone, any such missing texts could be "restored or replaced" by the ones from Plaintiff's phone.  That said, Defendants strenuously argue that Plaintiff's preservation efforts were inadequate, which serves as the basis for Defendants' own motion for spoliation sanctions.  (ECF No. 87).