IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **YVETTE COOPER,** | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Case No: 1:23-cv-03116-JRR |
| **BALTIMORE GAS AND ELECTRIC COMPANY,** *et al.,* | * | |
| | * | |
| *Defendants.* | | |

\* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION REQUESTING RELIEF FOR THE SPOLIATION OF EVIDENCE (PLAINTIFF'S PHONE)

Before the Court is Defendants' Motion for Sanctions Based on Spoliation of Text Messages And Other Communications (ECF No. 87). The Court has also reviewed Plaintiff's Opposition (ECF No. 92) and Defendants' Reply (ECF No. 100). Defendants asks the Court to dismiss Plaintiff's case with prejudice due to Plaintiff's alleged spoliation of evidence, and also seek attorneys' fees and costs incurred related to these issues, including the costs and fees associated with their motion. (ECF No. 87 at 1). The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). As set forth more fully below, the undersigned recommends[1] that U.S. District Judge Julie Rubin deny the relief as requested, but grant alternative relief based on Plaintiff's conduct.

Plaintiff has filed a multi-count Complaint against Defendants based on allegations that former GardaWorld Captain Tavon Roberts sexually harassed her, in large part relying on text

---

[1] Because Plaintiff seeks dispositive relief, the undersigned's authority as to such relief is limited to a "recommendation" to Judge Rubin pursuant to Local Rule 301.5.b.

messages in support of her allegations. (ECF No. 8). Defendants assert the alleged relationship between Plaintiff and Mr. Tavon Roberts, her former supervisor, was consensual, and contend that a full accounting of their text messages and other communications will further prove this. (ECF No. 87-1 at 4). To that end, Defendants requested production of text messages and other communications between Plaintiff and Mr. Roberts in native format in various discovery requests. *Id*. at 6-8. As it relates to the text messages, Plaintiff did not produce any text messages in native format between herself and Mr. Roberts as requested by Defendants in discovery. *Id*. at 7-8. Instead, Plaintiff produced screenshots of text messages that Defendants contend are an incomplete inventory of all such communications, and that even the screenshots for the messages produced are sometimes cut off, undated, and fail to include images and videos referenced in the messages. *Id*. As it relates to other communications besides text messages, Plaintiff produced only two Facebook Messenger messages that were both post-separation despite Plaintiff's testimony that the two exchanged such messages "almost every day" during her employment. *Id*. at 8.

As will be detailed below, Defendants argue that Plaintiff both failed to take necessary steps to preserve these communications as required, and also took affirmative steps to deprive Defendants of the complete catalog of these communications, entitling them to dismissal of Plaintiff's Complaint with prejudice, and for costs and fees associated with this issue (including the instant motion).

For her part, Plaintiff argues that the issue of her alleged consent is irrelevant and that, in any event, the screenshots she produced are more than enough for Defendants to attempt to make their arguments. (ECF No. 92 at 12-13). She defends her preservation as her best effort to capture all relevant communications, and that any alleged deficiencies were not the result of any intention on her part to deprive Defendants of evidence such that she did not possess the requisite culpable

2

state of mind for spoliation sanctions to be imposed. *Id*. at 9-10. In support of this, Plaintiff points to her (albeit unsuccessful) efforts to help reconstruct these communications in full. *Id*. at 4, 10.

## I. Background

Plaintiff's EEOC complaint was filed on September 22, 2022, which is within a month of when she separated from Gardaworld. (ECF No. 87-3 at 1). Plaintiff testified that she retained counsel in approximately September of 2022. (ECF No. 87-10 at 13). Plaintiff filed her case originally in the Circuit Court for Baltimore City on September 25, 2023. (ECF No. 8 at 1). Defendants were served on October 18, 2023. (ECF No. 1-4). The case was removed to this Court on November 15, 2023. (ECF No. 8 at 1). Both Plaintiff's EEOC filing and her Complaint rely on explicit text communications between herself and Mr. Roberts as proof of the alleged harassment.

In terms of her own preservation efforts, Plaintiff testified that she took screen shots of the text messages between herself and Mr. Roberts. (ECF No. 87-10 at 9). Her attorneys were not involved in that process, and, to her knowledge, her attorneys never reviewed the complete message thread between herself and Mr. Roberts (other than the screenshots she provided). *Id*. at 9-10. She never downloaded the entire text message stream for preservation. *Id*. at 9. Plaintiff was questioned extensively about the screen shots, including questions about threads that appeared to be incomplete, that appeared to attach videos, and that appeared to skip extended periods of time, but essentially reiterated that her preservation process as to the text messages was complete. *Id*. at 14-43. As will be explained in more detail below, the cell phone Plaintiff was using at the time, along with her iCloud backup, is no longer accessible.

3

As for the Facebook Messenger communications between herself and Mr. Roberts, Plaintiff confirmed that she probably communicated with Mr. Roberts on Facebook Messenger "almost every day" for the duration of her employment. *Id*. at 43-44. She gave her lawyer screenshots of "what I had," although only two messages were produced in discovery, both of which post-date her separation from the company. *Id*. at 44; ECF 87-9 at 3-6. Plaintiff testified that she no longer had access to those messages because, after she separated from the company, Mr. Roberts allegedly sent her threatening messages so that she blocked him, explaining "when you block somebody and they're no longer your friend, you can't see anything from them." (ECF No. 87-10 at 11-12; 45). She estimates that she did this "probably a year" before her January, 2025 deposition. *Id*. at 12.

Plaintiff's explanations for the disposition of her original cell phone have varied. In correspondence between her counsel and defense counsel on December 2, 2024, her counsel indicated that Plaintiff "traded" her phone, but the SIM card from the phone was retained which her counsel expected "contains information that when read will be responsive to interrogatories." (ECF No. 87-11 at 2). It is unclear exactly what, if any, information was contained on the SIM card, but it apparently did not contain any text messages. On December 11, 2024, Plaintiff's counsel indicated that Plaintiff "traded her phone in on September 4, 2024 at the T Mobile Metro Store located at 2400 N. Charles Street, Baltimore, Maryland 21218." (ECF No. 87-12 at 2). On December 20, 2024, after her counsel requested information from her that might allow for her old cell phone to be tracked down, Plaintiff informed her counsel that "she now has the old phone in her possession." (ECF No. 87-13 at 2).

In an affidavit dated December 22, 2024, Plaintiff swore that "in September of 2024, I took this cell phone to a repair store to attempt to have it fixed because of a cracked shell cover" but

4

Plaintiff was informed that the repair shop could not repair her phone. (ECF No. 87-15 at 2). She then reported that she "went to the Mobile Lizard located at 2621 Eastern Avenue, Baltimore, Maryland 21224 to attempt to purchase another iPhone 11." *Id*. The Mobile Lizard apparently did not have an Apple iPhone 11, so Plaintiff instead got a new Motorola phone, and retained her old phone and SIM card. *Id*. At her deposition on January 15, 2025, she explained that the cell phone at issue needed repair because "it cracked by dropping it so many times." (ECF No. 87-10 at 6). She suspected, however, that her texts were backed up on the cloud. *Id*. When confronted about the somewhat conflicting explanations of originally saying she traded her phone in, and then indicating that she still had the phone, Plaintiff testified that she originally just "thought" that she traded it in, but then realized she still had it. *Id*. at 7.

Eventually, the parties both filed discovery motions seeking access to Plaintiff's now-located cell phone, with the Court ordering a forensic examination of the phone, the SIM card, and Plaintiff's iCloud account.[2] (ECF No. 72 at 2). Plaintiff was also ordered to provide an authorization to T-Mobile, her former cell carrier, which, although not able to reproduce her text messages, would at least be able to provide a log of text communications to match against the screenshots provided by Plaintiff so as to verify the extent to which messages were missing. *Id*. at 3. T-Mobile subsequently responded that the log of messages sought falls outside its two-year retention period. (ECF No. 87-19 at 2).

Unfortunately, the parties subsequently informed the Court that Plaintiff could not recall the password from her phone or iCloud, and any attempt to reset them would result in a loss of all of the data. (ECF No. 75). Plaintiff subsequently moved for this Court to order Apple to unlock

---

[2] At the time, Plaintiff could not remember the credentials to her iCloud account and was ordered to contact Apple to attempt to reset them so that the iCloud account could be examined by the expert for responsive information. (ECF No. 72 at 2).

Plaintiff's phone and account without destroying the data, but, as detailed in its order, the Court declined to do so. (ECF No. 78). Plaintiff is exploring this with the General Counsel for Apple but, as of this writing, these efforts have not been successful. (ECF No. 92-4).

Thus, the current state of affairs is: (1) Plaintiff has only her screenshots of the text messages between herself and Mr. Roberts, which the Court views as an incomplete inventory given that some are cut off, some have no date, there are large gaps in time that are unaccounted for, and there are references to video attachments that were not produced (ECF No. 87-8 at 2-44); (2) Plaintiff has produced only two post-separation Facebook Messenger messages, when her testimony was that she communicated with Mr. Roberts on Messenger "almost every day" during her employment but lost access to the messages when she blocked Mr. Roberts, well after the litigation commenced; (3) Plaintiff's inability to recall her cell phone password and iCloud credentials renders both inaccessible; and, (4) T-Mobile is unable to produce a log of the messages because the date range sought falls outside its retention period.³

**II.     Legal Standard**

Plaintiff relies exclusively in her Opposition on cases premised on the Court's inherent authority applicable to spoliation generally, rather than the Federal Rules of Civil Procedure. (ECF No. 92 at 8-11).  In matters of alleged spoliation of Electronically Stored Information ("ESI") however, the amended version of Federal Rule of Civil Procedure 37(e) provides the exclusive analytical framework. While there is some overlap between pre-amendment caselaw and Rule 37(e)'s framework, Plaintiff's failure to rely on the correct standard puts her analysis at odds with the current state of the law in important respects.

---

³ All attempts to subpoena or depose Mr. Roberts and/or gain access to the text messages through him has been thwarted to date by his evasiveness.  That remains to be addressed by Judge Rubin, who has scheduled a hearing on the matter for June 5, 2025. (ECF No. 89).

As the Advisory Committee notes make clear, the 2015 amendments to Rule 37(e) were specifically designed to remedy that lack of clarity and consistency in the pre-amendment ESI spoliation case law where, under the talisman of "inherent authority," a court was free to grant or deny any potential sanction based on any state of mind from negligence to intentional bad faith. While the principles expressed in some of those cases overlaps consistently with Rule 37(e)'s requirements, to the extent that such pre-amendment cases are explicitly inconsistent with current Rule 37(e)— the Court no longer views them as persuasive in addressing spoliation of ESI. *See Fowler v. Tenth Planet, Inc.*, 673 F. Supp. 3d 763, 773 (D. Md. 2023); *Gov't Emps. Health Ass'n v. Actelion Pharms. Ltd.*, 343 F.R.D. 474, 482 (D. Md. 2023).

To trigger Rule 37(e), four initial criteria must be met: (1) the party was under a duty to preserve the ESI at issue; (2) the ESI at issue was not preserved; (3) the loss of the ESI was due to the party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery. Fed. R. Civ. P. 37(e); *Fowler,* 673 F. Supp. 3d at 767; *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 2483800, at *4 (E.D.N.C. June 7, 2017) (other citations omitted). If these four criteria are met, Rule 37(e) offers two alternative paths.

The first, under Rule 37(e)(1), requires a court to make a finding of prejudice before sanctions may be warranted. The second, under Rule 37(e)(2), requires a court to make a finding that a party acted with the *intent to deprive* the opposing party of the ESI prior to imposing sanctions. *In re Ethicon, Inc.*, No. 2:12-CV-00497, 2016 WL 5869448, at *3 (S.D.W. Va. Oct. 6, 2016) (emphasis in original); *see also Mod. Remodeling v. Tripod Holdings, LLC,* No. CCB-19-1397, 2021 WL 3852323, at *10 (D. Md. Aug. 27, 2021).

7

The kind of prejudice sufficient to trigger Rule 37(e)(1) occurs "when, as a result of the spoliation, the party claiming spoliation cannot present 'evidence essential to its underlying claim.'" *Al-Sabah v. Agbodjogbe*, No. ELH-17-730, 2019 WL 4447235, at *5 (D. Md. Sept. 17, 2019) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522–23 (D. Md. 2010)). To justify the more severe sanctions of Rule 37(e)(2), as Defendants seek here, the moving party must demonstrate that the failure to preserve was motivated by an intent to deprive the moving party of the use of the information in the litigation. *Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.*, SAG-18-3403, 2020 WL 1809191, at *4 (D. Md. Apr. 9, 2020). Negligent or even grossly negligent behavior will not suffice. Fed. R. Civ. P. 37(e) 2015 Advisory Committee Notes; *Mod. Remodeling*, 2021 WL 3852323 at *10. The burden of proof is on the party seeking sanctions, and the standard of proof in the Fourth Circuit appears to be "clear and convincing" evidence where, as here, relatively harsh sanctions are sought. *Id.*

The Court has no trouble concluding that the four threshold requirements set forth in Rule 37(e) are easily met here. Plaintiff filed her EEOC complaint in September of 2022 and retained counsel that same month. Her text messages are prominent in that filing. Further, Plaintiff filed her lawsuit in September of 2023, where the messages are again an integral part of her allegations. There is no question that the duty to preserve relevant evidence attached at the latest in September of 2022 when Plaintiff decided to pursue her claim. *See Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 292 (D. Md. 2023); *Felder v. MGM Nat'l. Harbor, LLC*, No. PJM-18-3405, 2024 WL 3690779 at *8 (D. Md. Aug. 7, 2024).

As for the second requirement, the Court has concluded from its own review of the screenshots provided that even the screenshots provided inadequately capture the full extent of the text messages between Plaintiff and Mr. Roberts. The screenshots are visibly incomplete based

8

on being cut off and lacking referenced attachments such as videos. They are, in some cases, undated. And there are long gaps in time where there are no messages at all, strongly suggesting that they are not the full inventory of relevant text messages between the two. Further, Plaintiff testified that she exchanged Facebook Messenger messages with Mr. Roberts "almost every day" during her tenure at GardaWorld, yet only produced two post-separation messages. She also took affirmative steps to block Mr. Roberts, thereby depriving the parties of access to the messages during the pendency of the present suit. Thus, unequivocally, discoverable ESI was lost based on her lack of preservation.

The Court also concludes that neither Plaintiff nor her counsel took reasonable steps to preserve the information. While there may be cases where self-collection or screenshots could be defensible where such messages were not numerous and/or central to the allegations, this is not such a case. Additionally, based on the information presented to the Court, counsel took no steps to assist in preservation at a time when the messages were still easily preserved, and took no steps to collect the Facebook Messenger messages which were still accessible until Plaintiff blocked Mr. Roberts in approximately late 2023 or early 2024. *See Vander Pas v. Bd. of Regents of the Univ. of Wis. Sys.*, 664 F.Supp3d 893-906 (E.D. Wis. 2023) (noting that "counsel should be wary of permitting clients to self-collect their ESI"). Nor can the Court conclude that the remaining messages would simply be cumulative in that the volume and nature of the messages would do much to provide the full tenor of the relationship that is the basis for the lawsuit.

Finally, the Court has detailed the extensive efforts undertaken to recover the missing communications, to no avail. Although there is always the possibility that such communications might still come to light through Mr. Roberts or possibly through Plaintiff's counsel's efforts with Apple's general counsel, that remains completely speculative at this point.

Having found that Rule 37(e)'s initial requirements are met, the question then becomes which, if any, sanctions are available.

Recognizing that Defendants seek dismissal, pursuant to Rule 37(e)(2), the Court nonetheless begins its analysis of available sanctions under Rule 37(e)(1). That requires a threshold finding of prejudice, defined as preventing one's opponent from presenting evidence essential to a claim or defense. *See Al-Sabah*, 2019 WL 4447235 at *5 (quoting *Victor Stanley*, 269 F.R.D. at 522–23). In this regard, Plaintiff argues that the evidence sought goes to the issue of whether the alleged harassment was consensual which, Plaintiff argues, is irrelevant. The Court disagrees. For sexual harassment to be actionable, it is well established that it must be, *inter alia*, unwelcome. *See, e.g., Albero v. City of Salisbury*, 422 F. Supp. 2d 549, 557-58 (D. Md. 2006) (granting summary judgment for defense based, in part, on Plaintiff failing to present evidence from which a reasonable juror could conclude the alleged harassment was unwelcome). The evidence sought goes directly to that issue. Though not presently before the Court (as Defendants seek only Rule 37(e)(2) sanctions), the undersigned would have at the very least recommended some sanction pursuant to Rule 37(e)(1). The nature of that sanction is less obvious.

For example, the Advisory Committee notes to the 2015 Amendments to Rule 37(e)(1) give examples such as "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the lost information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than the instructions to which subdivision (e)(2) applies [i.e., adverse inference]." Fed. R. Civ. P. 37(e)(1) 2015 Advisory Committee Notes. In this case however, forbidding the Plaintiff from offering or referencing the text messages does little to remedy the prejudice. If anything, such exclusion would compound the prejudice in that Plaintiff would further distance

10

herself from the communications since Defendants would then be left to introduce incomplete communications as their only evidence of the consensual nature of the relationship. Alternatively, allowing Defendants to introduce the circumstances of the loss might partially remedy the prejudice, but jurors could easily get confused by the timeline and logistics of that evidence without more. Accordingly, if the undersigned were to recommend Rule 37(e)(1) sanctions, it would be a combination of allowing Defendants to fully explore Plaintiff's lack of preservation before the jury, combined with an appropriate instruction from the Court. While the undersigned would of course leave the fashioning of any such instruction to Judge Rubin as the trial judge, the undersigned would suggest the following as a possible starting point:

> You are instructed that Plaintiff had a duty to preserve all relevant communications between herself and Mr. Roberts, but failed to do so, likely resulting in a loss of evidence being available to the Defense regarding the alleged consensual nature of the relationship between Plaintiff and Mr. Roberts. You should not speculate as to what that evidence might have included or which party (if any) it might have supported. However, you should not conclude based merely on any perceived absence of evidence of additional communications between Plaintiff and Mr. Roberts that Plaintiff has carried her burden of demonstrating that their relationship was not consensual. Rather, you should consider all the evidence and testimony in this case in determining whether the parties have or have not met their respective burdens of proof without regard to which side produced it or the relative volume of information each side produced.

Turning to the relief requested in the instant motion--the sanction of dismissal with prejudice--Rule 37(e)(2) requires that Defendants demonstrate by clear and convincing evidence that Plaintiff's failure to preserve the text and Facebook Messenger communications between herself and Mr. Roberts was motivated by an "intent to deprive" Defendants' of the use of the information in the litigation. Fed. R. Civ. P. 37(e)(2). To be sure, there are some circumstances surrounding Plaintiff's lack of preservation well after the duty to preserve attached and well after she had engaged counsel that tend to support such intent. For example, Plaintiff offered shifting explanations for the whereabouts of her phone, first suggesting that she traded it in but ultimately

11

admitting it was still in her possession. She offered no details on how it became damaged, except to verify that this occurred through multiple drops, but suggesting it nonetheless remained operable until nearly a year after suit was filed. She admits that she took the affirmative step of blocking Mr. Roberts on Facebook—again after suit had been filed—understanding that the effect of that would be to make their "almost daily messages" inaccessible yet foregoing any steps to preserve those messages beforehand. And she now claims she cannot remember either the passcode for her phone nor the code for her iCloud account.[4]

On the other hand, Plaintiff's counsel has actively attempted to recover the lost communications since at least January of 2025 when counsel agreed that a forensic examination of Plaintiff's cell phone was appropriate (having already offered such an examination of the SIM card when it was believed the phone had been traded). (ECF No. 55). Plaintiff's counsel has actively cooperated in the forensic process to gain access, and, when that failed to be fruitful, took the extra step of contacting Apple's general counsel. Such efforts are inconsistent with an intent to deprive.

The evidence on intent to deprive is, therefore, mixed. Under such circumstances, the undersigned cannot conclude that Defendants have carried their burden of establishing an intent to deprive by clear and convincing evidence so as to justify the sanction they seek. Therefore, the undersigned recommends that Defendants' Motion for Sanctions be denied.

Dated: May 16, 2025

/s/
J. Mark Coulson
United States Magistrate Judge

---

[4] It is unclear to the Court whether these codes are the same or different from each other.